## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| UNILOC USA, INC., UNILOC LUXEMBOURG, S.A., UNILOC 2017 LLC, | §<br>§<br>§ | |
| *Plaintiffs*, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 2:17-CV-00651-JRG |
| SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG ELECTRONICS CO. LTD., | §<br>§<br>§<br>§ | |
| *Defendants*. | §<br>§ | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendants Samsung Electronics America, Inc. and Samsung Electronics Co. Ltd.'s (collectively, "Samsung") Motion to Strike Certain Opinions in the Amended Expert Report of R. Christopher Rosenthal ("the Motion to Strike") (Dkt. No. 175) and Samsung's Second *Daubert* Motion to Exclude Certain Opinions and Testimony of Uniloc's Damages Expert R. Christopher Rosenthal ("the *Daubert* Motion") (Dkt. No. 184).

For the reasons described herein, the Court finds that the Motion to Strike should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART** as follows:

The Court **GRANTS** the Motion to Strike with respect to paragraphs 40, 91–97, 108(B), Exhibits 1 and 2, and certain documents in Appendix D of Mr. Rosenthal's 3/12/19 Amended Report. The Court **DENIES** the Motion with respect to paragraph 108(A) of Mr. Rosenthal's 3/12/19 Amended Report.

Further, the Court finds that the *Daubert* Motion should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART** as follows:

The Court **GRANTS** the *Daubert* Motion with respect to the RoyaltySource Licenses, the issue of apportionment and the Entire Market Value Rule, and the references to Samsung's overall revenue projections and totals. The Court **DENIES** the *Daubert* Motion with respect to the ███████ License.

# I.    **Factual and Procedural History**

The Court held a pretrial hearing on March 4, 2019, in preparation for a trial then set to begin on April 1, 2019, to address a number of pending motions, including Samsung's Motion for Summary Judgment of Non-Infringement. (Dkt. No. 102). After considering the parties' submissions, the Court granted Samsung's motion for summary judgment of noninfringement with respect to direct infringement by Samsung and denied the motion as to indirect infringement. (*See* Dkt. No. 173).

Since Plaintiffs Uniloc USA, Inc., Uniloc Luxembourg, S.A., and Uniloc 2017 LLC (collectively, "Uniloc") sought pre-suit damages only for direct infringement, the Court's order eliminating direct infringement also had the effect of eliminating the pre-suit damages period. Uniloc's damages expert, R. Christopher Rosenthal, had not then distinguished between pre-suit and post-suit damages in his original damages report. Rather than striking Mr. Rosenthal's entire report on the eve of trial, the Court exercised its discretion to grant Uniloc limited leave to submit an amended expert report that accounted for the Court's ruling. Specifically, the Court instructed Uniloc that any amendments should ***only*** effectuate the Court's ruling by truncating the relevant damages period to distinguish between pre-suit damages (direct infringement) and post-suit damages (indirect infringement). The Court instructed Uniloc that it was not permitted to otherwise introduce new material, opinions, or analyses, and counsel for Uniloc indicated that they understood the Court's instructions and had no additional questions. The Court also reset the trial to start on April 23, 2019. Further, and in view of the limited scope of amendment, the Court set the following expedited briefing schedule:

- Uniloc's amended report was due three days after the hearing, on March 8, 2019.
- Samsung's responsive damages report was due on March 11, 2019.
- Both parties could take relevant depositions no later than March 14, 2019.
- Both parties could submit *Daubert* motions, if any, no later than March 18, 2019.

- Both parties could submit responses to any *Daubert* motions no later than March 21, 2019.

Consistent with the Court's order, Uniloc served Samsung with Mr. Rosenthal's amended damages report on March 8, 2019 ("the 3/8/19 Amended Report"). Samsung immediately lodged objections to such, saying that various portions of the 3/8/19 Amended Report went beyond the scope granted by this Court and were accordingly improper. (Dkt. No. 175 at 5). The parties conferred between March 8 and March 11, and partially resolved their disputes—Uniloc agreed to withdraw a number of additions while Samsung agreed to withdraw a number of objections. (*Id.*) Uniloc served Samsung with Mr. Rosenthal's second amended damages report on March 12, 2019 ("the 3/12/19 Amended Report"), implementing the agreements that resulted from their meet-and-confer process. The 3/12/19 Amended Report is identical to the 3/8/19 Amended Report in all respects relevant to this Order, except that it has different paragraph numbering resulting from a number of the prior paragraphs being altered.

On March 12, 2019, Samsung filed the present Motion to Strike portions of the 3/8/19 Amended Report as beyond the leave granted by the Court and thus untimely pursuant to Fed. R. Civ. P. 26.[1] (Dkt. No. 175). Samsung specifically asked the Court to strike paragraphs "40, 87–93, 104, Exhibits 1 and 2, and certain documents in Appendix D (i.e., the 74 new documents, two new patent applications, and the previously unconsidered deposition transcript and exhibits of Arthur Kinsolving)". (*Id.* at 5). Uniloc timely responded to the Motion to Strike on March 15,

---

[1] Samsung's Motion to Strike appears to be indexed to the 3/8/19 Amended Report rather than the final 3/12/19 Amended Report. (*See, e.g.*, Dkt. No. 175 at 11 (citing ¶ 104 of the *3/8/19 Amended Report*)). As the two reports have different pagination and paragraph numbering, the requests in Samsung's Motion to Strike do not line up with the 3/12/19 Amended Report. For example, Samsung's Motion to Strike asks the Court to strike paragraphs 87–93, but paragraphs 87 and 88 of the 3/12/19 version are taken verbatim from Mr. Rosenthal's original report. To avoid undue delay in resolving the Motion to Strike, the Court has identified and refers herein to the paragraphs in the 3/12/19 version that correspond to the 3/8/19 version. The Court finds that Samsung's Motion to Strike is addressed to paragraphs 40, 91–97, and 108 of the 3/12/19 Amended Report. Those paragraphs in the 3/12/19 Amended Report contain the text contained in paragraphs 40, 87–93, and 104 of the 3/8/19 Amended Report.

2019, in part seeking additional leave to amend to the extent the Court found Mr. Rosenthal's 3/12/19 Amended Report went beyond the Court's order granting leave to amend. (Dkt. No. 181). While the Motion to Strike for untimeliness was pending, Samsung also filed the present *Daubert* Motion seeking to exclude various opinions contained in Mr. Rosenthal's 3/12/19 Amended Report pursuant to *Daubert*. (Dkt. No. 184). Uniloc **untimely** responded[2] to the *Daubert* Motion on March 22, 2019. (Dkt. No. 187).

As detailed in Sections III.A(1)–(4) and III.C of this Order, Uniloc's briefing in response to Samsung's *Daubert* Motion relies heavily on the new material added in Mr. Rosenthal's 3/12/19 Amended Report. In a moment of admirable candor, Uniloc *explicitly concedes in the briefing* that it made numerous changes to respond to criticisms raised in Samsung's first *Daubert* motion, rather than in response to the Court's order. (*See, e.g.*, Dkt. No. 181 at 6 ("Mr. Rosenthal amended his *Georgia-Pacific* Factor 13 analysis to answer Samsung's direct criticism that he did not begin his analysis with the smallest-salable patent practice [*sic*] unit. Samsung's suggestion that Mr. Rosenthal's ultimate royalty opinion, which was based on comparable license agreements, was improper. . . . Mr. Rosenthal thus provided this analysis—starting his *Georgia-Pacific* analysis with the technology most closely related to the patent in suit that could be valued. That was the fitness tracker."); *id.* at 11 ("Finally, Mr. Rosenthal reviewed the deposition transcript of Arthur Kingsolving [*sic*] at the request of Samsung's own counsel and in response to Samsung's *Daubert* motion against Mr. Rosenthal.")).

---

[2] This Court's local rules instruct parties that a failure to timely oppose a motion "creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." *See* Local Rule CV-7(d). While the Court ultimately exercises its discretion to evaluate the arguments made in Uniloc's response brief, it does not reflect well upon Uniloc that the brief in which Uniloc contends Mr. Rosenthal's opinions were timely disclosed was *itself* untimely filed.

Since resolution of Samsung's Motion to Strike affects the Court's analysis of Samsung's *Daubert* Motion, the Court first addresses the Motion to Strike and will subsequently turn to the *Daubert* Motion.

## II.     Legal Standard for a Motion to Strike

A party must disclose the opinions of its experts "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). When confronted with a violation of Rule 26, Rule 37 grants district courts the authority to exclude untimely information. Fed. R. Civ. P. 37(c)(1). Since a district court has "broad discretion" in imposing a sanction pursuant to Rule 37, a district court's decision "will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013); *Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 294–95, 296–97 (5th Cir. 2016) (holding that Rules 26 and 37 operate jointly to create a "federal discovery scheme" that assigns "broad discretion" to district courts with respect to "their control of timing and sanctions for noncompliance").

Four factors guide the Court's exercise of discretion in evaluating whether to exclude evidence under Rule 37. *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009). Those factors are: "(1) [The untimely party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the objecting party] in allowing the evidence, and (4) the availability of a continuance." *Id.* A party's failure to provide *any* justification for its untimely disclosure weighs heavily in favor of striking the disclosure, and may even be sufficient standing alone to support exclusion. *Sobrino-Barrera v. Anderson Shipping Co.*, 495 F. App'x 430, 433 (5th Cir. 2012) (affirming district court's exclusion of an expert's new affidavit purporting to supplement the original report with new methodology because the proffering party gave no justification for untimeliness); *Patterson v. Houston Indep. Sch. Dist.*, 570 F. App'x 367,

370 (5th Cir. 2014) (collecting cases affirming district court exclusions where the party offered no justification for untimeliness).

## III.    Discussion

The Court addresses Samsung's Motion to Strike by considering four categories of testimony contained in Mr. Rosenthal's 3/12/2019 Amended Report: (1) paragraph 40, (2) paragraphs 91–97, (3) paragraph 108 and Exhibits 1–2, and (4) certain new documents contained in Appendix D. The analysis for all four categories of testimony overlaps in certain respects but is distinct in others. Accordingly, the Court will consolidate its analysis where practicable and will identify distinct reasoning where otherwise appropriate.

### A.  Factor 1—Party's Explanation

#### 1.  Paragraph 40

Paragraph 40 of Mr. Rosenthal's 3/12/19 Amended Report contains Mr. Rosenthal's comparison of the patent-in-suit, U.S. Patent No. 7,690,556 ("the '556 Patent") to the various patents covered by the four licenses identified by the RoyaltySource database (collectively, "the RoyaltySource Licenses"). (Dkt. No. 175-6 at 12 ¶ 40). In paragraph 40, Mr. Rosenthal offers a new technological comparability analysis based on an untranscribed, thirty-minute phone call he had with Uniloc's technology expert, Dr. William Easttom II. (Dkt. No. 184-3 at 117:1–118:1). Mr. Rosenthal represents that Dr. Easttom ranked the comparability of the four RoyaltySource License agreements on a scale from one to four, based on two criteria: "the degree of improvement over existing technology as well as a comparable level of skill and innovation regarding the patents in the RoyaltySource agreements." (Dkt. No. 175-6 at 12 ¶ 40). "According to Dr. Easttom, anything equal to or above a 2 on his scale is comparable from a technical standpoint." (*Id.*) Mr. Rosenthal acknowledged that while Dr. Easttom provided him with numerical *conclusions* about

technological comparability, Dr. Easttom did not explain the basis for the scale, the basis for the cutoff thresholds used in the scale, the basis for the criteria, the metrics for measuring the criteria, or any other details that informed Dr. Easttom's conclusions about comparability. (*See* Dkt. No. 184-3 at 120:11–124:11). Mr. Rosenthal confirmed at deposition that he could not explain the basis for Dr. Easttom's conclusions and suggested, "it's probably better for Mr. Easttom to answer" the "lot of technical questions" which Samsung raised. (*Id.* at 261:8–9).

Uniloc does not offer a justification for the new opinions contained in paragraph 40. Uniloc does not claim, for example, that the new analysis in paragraph 40 is necessary to implement the Court's order or that it is otherwise reactive to the Court's grant of summary judgment. Instead, Uniloc attempts to argue that the technological comparability analysis in paragraph 40 is not substantively "new," but instead reflects substantially the same analysis as is present in Mr. Rosenthal's original report. (Dkt. No. 181 at 5).

Uniloc's argument is untenable because paragraph 40 is new in every sense of the term. It is literally new, in the sense that the language in paragraph 40 is not contained anywhere in Mr. Rosenthal's original report. It is also substantively new, in the sense that *none* of the analysis contained in the amended paragraph 40 is present in Mr. Rosenthal's original report. Mr. Rosenthal's original report does not include an analysis of technological comparability for the RoyaltySource Licenses at all. That is to say, it does not compare the claims of the '556 Patent to the claims in any of the patents licensed under the four RoyaltySource License agreements. (*See* Dkt. No. 175-3 at 10 ¶¶ 37(A)–(D) (listing the four RoyaltySource Licenses without discussing the claims of the '556 Patent or conducting any other analysis)). By contrast, new paragraph 40 purports to introduce a new quantitative scale based on new criteria which come to new conclusions about the comparability of the RoyaltySource Licenses. (*See* Dkt. No. 175-6 at 12 ¶

40). Specifically, the original report has no methodology for comparison; the new report has a quantified scale. (*Compare* Dkt. No. 175-3 at 10 ¶¶ 37(A)–(D), *with* Dkt. No. 175-6 at 12 ¶ 40). The original report has no criteria for comparing the RoyaltySource patents and the '556 Patent; the new report introduces two new criteria. (*Compare* Dkt. No. 175-3 at 10 ¶¶ 37(A)–(D), *with* Dkt. No. 175-6 at 12 ¶ 40). The original report concludes that all four RoyaltySource patents are comparable; the new report rejects that conclusion and opts for the view that only three are comparable. (*Compare* Dkt. No. 175-3 at 10 ¶¶ 37(A)–(D), *with* Dkt. No. 175-6 at 12 ¶ 40). The use of a new methodology to reach a new conclusion can only be fairly described as new, and well beyond the scope allowed by the Court.

Underscoring the newness of paragraph 40, in its *Daubert* briefing on technological comparability, Uniloc does not identify *any* material from Mr. Rosenthal's original report in support of its comparability argument. (*See* Dkt. No. 187 at 1–3, 7–8) (addressing technological comparability without referencing the content of Mr. Rosenthal's original report). Paragraph 40 is the only portion of *any* of Mr. Rosenthal's reports upon which Uniloc relies for technological comparability. (*See id.* at 7–8). Fundamentally, when pressed to identify a basis in Mr. Rosenthal's report for technological comparability, Uniloc only pointed to new material.

Accordingly, the Court finds that the material in paragraph 40 is new and beyond the scope permitted by the Court. Further, Uniloc has offered no justification for its untimeliness. The Court thus finds that Factor 1 weighs in favor of striking paragraph 40.

### 2. Paragraphs 91–97

Paragraphs 91–97 of Mr. Rosenthal's 3/12/19 Amended Report describe additional analysis of *Georgia-Pacific* Factor 9,[3] including quantification of the various measurement efficiency gains purportedly created by the '556 Patent. In Mr. Rosenthal's original report, the *Georgia-Pacific* Factor 9 analysis consists of four paragraphs. (Dkt. No. 175-3 at 25–26 ¶¶ 84–87). The first two paragraphs are quoted excerpts of the specification of the '556 Patent. (*Id.* at 25–26 ¶¶ 84–85). The third paragraph summarizes the excerpts, stating that the '556 Patent "is more accurate than older modes." (*Id.* ¶ 86). The fourth paragraph concludes that since Samsung caters to "fitness and health conscious consumers," Samsung would consider the '556 Patent to be "an important factor." (*Id.* ¶ 87).

Mr. Rosenthal's 3/12/19 Amended Report adds seven new paragraphs and a chart.[4] (Dkt. No. 175-6 at 27–28 ¶¶ 91–97). The first paragraph (*id.* ¶ 91) and the chart attempt to quantify "the percentage improvement in accuracy over previous modes of calculating calorie burn information." (*Id.*) This quantitative analysis is completely new in Mr. Rosenthal's 3/12/19 Amended Report. The subsequent six paragraphs introduce new arguments about Samsung's prototypical "use case" (*id.* ¶ 92), commentary on Samsung's damages expert (*id.* ¶¶ 93–94), analysis of Samsung's "S-Health" application (*id.* ¶¶ 94–95), and reliance upon Samsung's own internal reviews (*id.* ¶ 96).

Samsung argues that paragraphs 91–97 introduce information that is unfairly advantageous to Uniloc, unrelated to the Court's order granting leave to amend, and otherwise "completely new."

---

[3] *Georgia-Pacific* Factor 9 examines "[t]he utility and advantages of the patent property over old modes or devices, if any, that has been used for working out similar results." *Ga.-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Ga.-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

[4] The chart referenced in this section is located at the top of page 28 and has a header that reads, "Measure the angle when climbing stairs or hiking to determine exact amount of calories burned." (Dkt. No. 175-6 at 28). Unless otherwise specified, each reference to "the chart" in this Order should be understood to refer to this specific chart.

(Dkt. No. 175 at 10). In its response, Uniloc does not dispute that the information is new. Uniloc also does not argue that the additional information added in paragraphs 91–97 was introduced in order to effectuate the Court's grant of leave to amend. Instead, Uniloc claims that the Court should not strike paragraphs because they are broadly "consistent with [Mr. Rosenthal's] prior analysis." (Dkt. No. 181 at 4–5).

The Court finds that Factor 1 favors striking paragraphs 91–97 and the chart. Both paragraph 91 and the chart introduce a substantially new basis for Mr. Rosenthal's opinion: a quantitative claim that the "accuracy of calorie burn information would have improved between 23% to 118% depending on the degree of incline" based on "the use of '556 patent." (Dkt. No. 175-6 at 27 ¶ 91). This quantitative analysis is not fairly disclosed by the original report for the simple reason that it is not mentioned in the original report. The calculations contained in paragraph 91 and the chart thus furnish additional, originally undisclosed support for Mr. Rosenthal's analysis of *Georgia-Pacific* Factor 9.

Similarly, the Court finds that paragraphs 92–97 are also both literally and substantively new. Paragraphs 92–97 are literally new in the sense that the language contained in the paragraphs is not present in Mr. Rosenthal's original report. Paragraphs 92–97 are also substantively new because they introduce additional and previously undisclosed justifications for Uniloc's *Georgia-Pacific* Factor 9 analysis.

As was true of paragraph 40, the newness of paragraphs 91–97 is demonstrated by Uniloc's response to Samsung's *Daubert* Motion. When pressed by Samsung's *Daubert* Motion to demonstrate an apportionment analysis, Uniloc did not cite a single paragraph that was present in Mr. Rosenthal's original report. (*See* Dkt. No. 187 at 11–15) (discussing Mr. Rosenthal's apportionment analysis without reference to the original report). Uniloc instead relied on the

wholly new paragraphs 91–97. (*Id.* at 11 (citing ¶¶ 91– 97 & ¶¶ 91–92); *id.* at 12 (citing ¶¶ 93– 94 & ¶¶ 94–95 & ¶¶ 95–96); *see also id.* at 11, 12 (citing ¶ 108(B)). Uniloc's failure to mention any material from the original report emphasizes the substantially new nature of this new content contained in paragraphs 91–97.

Accordingly, the Court finds that Factor 1 favors striking paragraphs 91–97 and the chart contained in Mr. Rosenthal's 3/12/19 Amended Report.

### 3. *Paragraph 108 and Exhibits 1–2*

Paragraph 108 of the 3/12/19 Amended Report describes Mr. Rosenthal's apportionment analysis with respect to the handheld phones and wearable devices that are accused of infringement. Paragraph 108(A) is specific to handheld phones and is excerpted verbatim from Mr. Rosenthal's original report. (*Compare* Dkt. No. 175-3 at 29 ¶ 99(A), *with* Dkt. No. 175-6 at 32 ¶ 108(A)). Paragraph 108(B) is specific to wearable devices, and summarizes the new apportionment analysis contained in Exhibits 1–2 of Mr. Rosenthal's report. (*See* Dkt. No. 175-6 at 32 ¶ 108(B)).

The Court finds that paragraph 108(A) was not untimely disclosed because it was fully contained in Mr. Rosenthal's original report. Paragraph 108(A) is thus not subject to the Rule 37 analysis.

Paragraph 108(B) and Exhibits 1–2 encompass the same subject matter—a wholly new apportionment analysis conducted by Mr. Rosenthal. Uniloc does not argue that this material is justified as substantially consistent with Mr. Rosenthal's original report. In fact, Uniloc *expressly admits* the testimony is completely new and unrelated to the Court's order. Uniloc explains that:

> Mr. Rosenthal amended his *Georgia-Pacific* Factor 13 analysis **to answer Samsung's direct criticism** that he did not begin his analysis with the smallest-salable patent practice [*sic*] unit. Samsung's suggestion that Mr. Rosenthal's ultimate royalty opinion, which was based on comparable license agreements, was

> improper. . . . Mr. Rosenthal thus provided this analysis—starting his *Georgia-Pacific* analysis with the technology most closely related to the patent in suit that could be valued. That was the fitness tracker.

(Dkt. No. 181 at 6) (emphasis added). Uniloc's admission is confirmed by the new and substantive apportionment analysis conducted in Exhibits 1 and 2. (*See* Dkt. No. 175-6 at Exhibits 1–2). In both Exhibits, Mr. Rosenthal relies upon new documents to generate new royalty rates. (*See id.*) While Mr. Rosenthal also discusses documents referenced in his original report, he offers completely new opinions about the royalty rates justified by those same documents—specifically, Mr. Rosenthal concludes that a higher royalty rate is appropriate. *See id.* For example, in Mr. Rosenthal's original report, he reviewed the document Bates-stamped SAM_00126516 and concluded that it justified a royalty of "approximately *7 percent*." (Dkt. No. 175-3 at 31 ¶ 99(B)(vii)). When he considered that same document in the 3/12/19 Amended Report, Mr. Rosenthal concluded that it justified a royalty of *27.9 percent*—four times higher than the original rate. (Dkt. No. 175-6 at 48, Exhibit 1, #6). Mr. Rosenthal offers no explanation for why the same document would support such different royalty rates. (*See id.*). Similarly, Mr. Rosenthal's original report concluded that the document Bates-stamped SAM_00137313 supported a *4 percent* royalty rate. (Dkt. No. 175-3 at 31 ¶ 99(B)(ix)). However, upon consideration of that same document in the 3/12/19 Amended Report, Mr. Rosenthal concluded that it justified a royalty rate of *42 percent*—a stark and unjustified departure from the original rate. (Dkt. No. 175-6 at 49, Exhibit 2, #7). Mr. Rosenthal's 3/12/19 Amended Report offers no justification for these sizeable increases in the purportedly appropriate royalty rate, and Uniloc does not attempt to justify any the new apportionment analysis by reference to the Court's order granting leave to amend.

Uniloc's argument that its amendments were made in response to Samsung's criticisms misses the mark, and actually support exclusion of this testimony. (Dkt. No. 181 at 8). Mr.

Rosenthal's potential failure to conduct a proper *Georgia-Pacific* Factor 13 analysis affords no basis for Uniloc to untimely amend Mr. Rosenthal's expert report on the eve of trial. *See Miles v. HSC-Hopson Servs. Co.*, 625 F. App'x 636, 639 (5th Cir. 2015) ("A district court does not abuse its discretion where it 'refus[es] to give ineffective litigants a second chance to develop their case.'" (quoting *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997)). Uniloc's argument that it made amendments in response to Samsung's *Daubert* arguments demonstrates that Uniloc was *not* making amendments pursuant to the Court's instructions. Since Uniloc concedes that the analysis set forth in paragraph 108(B) and Exhibits 1–2 was conducted in response to Samsung's arguments—rather than this Court's order—the Court finds that Factor 1 favors striking paragraph 108(B) and Exhibits 1–2.

### 4. Certain New Documents in Appendix D

Mr. Rosenthal's 3/12/19 Amended Report adds a variety of new documents to Appendix D, which lists the "Documents Considered" in the report. (Dkt. No. 175-6 at App'x D). The header "Documents Considered" is divided into two subheaders—"Documents Received Prior to Original Report," which are included in Mr. Rosenthal's original report, and "Documents Received Subsequent to Original Report," which are newly added in Mr. Rosenthal's 3/12/19 Amended Report.[5] (*Id.*) The latter header included "74 new documents, two new patent applications, and the previously unconsidered deposition transcript and exhibits of Arthur Kinsolving." (Dkt. No. 175 at 13; Dkt. No. 181 at 7–8).

Uniloc does not dispute that Mr. Rosenthal's 3/12/19 Amended Report contains the new documents listed under the header "Documents Received Subsequent to Original Report." (*See*

---

[5] Mr. Rosenthal appears to use these documents in various ways throughout his 3/12/19 Amended Report, including in support of his apportionment analysis. Other newly considered documents are not expressly relied upon at all. (*See, e.g.*, Dkt. No. 175-6 at 47 (listing "U.S. Patent Application Publication No. US 2012/0101350" as a document considered though no mention of the patent application is made in the body of the 3/12/19 Amended Report)).

Dkt. No. 181 at 7–8). Nor does Uniloc contend that these documents were present in Mr. Rosenthal's original report. (*See id.*) Instead, Uniloc offers two rationales for its untimely addition—first, the documents were produced by Samsung on December 20, 2018, which was "three weeks after Mr. Rosenthal served his initial report" (*id.* at 7, 9) and second, the documents "were considered by Mr. Rosenthal in direct response to criticisms Samsung made against his *Georgia-Pacific* Factor 13 analysis" (*id.* at 8).

At the outset, both rationales are wholly unrelated to the Court's order granting Uniloc leave to amend. The Court's order was limited in scope and purpose—to differentiate between pre-suit damages and post-suit damages in view of the Court's order granting summary judgment of no direct infringement. Uniloc does not argue, to any extent, that its changes are related to the Court's order.

Further, both of Uniloc's rationales fail to justify Uniloc's untimely additions. First, Uniloc could have sought leave to amend Mr. Rosenthal's expert report when it first received Samsung's additional documents on December 20, 2018. It did not, despite having months to do so after receiving the documents. Uniloc identifies no reason why the Court should permit Uniloc to amend its expert report mere weeks before trial when Uniloc chose not to seek leave to amend in the months preceding trial. Second, Uniloc again *expressly admits* that it added documents in response to *Samsung's arguments* rather than this Court's order. (*Id.* at 8). Without leave of Court and on the eve of trial, Uniloc has added new material in an explicit attempt to avoid Samsung's timely-disclosed criticisms. Such is not proper.

Accordingly, the Court finds that Factor 1 favors striking the "74 new documents, two new patent applications, and the previously unconsidered deposition transcript and exhibits of Arthur Kinsolving" newly added to Appendix D of Mr. Rosenthal's 3/12/19 Amended Report.

**B. Factor 2—Importance of the Evidence**

The analysis for Factor 2 is the same for all four categories of testimony. The Court finds that this factor is neutral. *See CQ, Inc.*, 565 F.3d at 280 n.7 (5th Cir. 2009). In *CQ*, the Fifth Circuit affirmed a district court's exclusion of damages evidence pursuant to Rule 37 even though the damages evidence was "clearly important" to the plaintiff's case. *Id.* Despite acknowledging the importance of the damages evidence, the court affirmed the exclusion because the district court left a separate viable damages theory "on which [the plaintiff] could proceed to trial." *Id.* As such, "the district court's exclusion of evidence" was not tantamount to a complete "dismissal of the plaintiff's claims" and thus fell within the district court's discretion. *Id.* (citing *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 117 (5th Cir. 1993)).

In this case, Uniloc maintains a separate, viable damages theory upon which it can "proceed to trial" regardless of the outcome of Samsung's Motion to Strike. *See CQ, Inc.*, 565 F.3d at 280 n.7. All four categories of testimony at issue in Samsung's Motion to Strike deal with Mr. Rosenthal's opinion on the royalty rate for allegedly infringing wearable devices, such as smart watches. (*See* Dkt. No. 175-6 at 34–35 ¶¶ 112(A)–(H)) However, Mr. Rosenthal also offered a separate opinion about damages from allegedly infringing handheld devices, such as cellphones. (*See* Dkt. No. 175-6 at 35 ¶¶ 113(A)–(G)). The damages theory regarding handheld devices is substantively distinct, and is based on different evidence than the damages theory for wearable devices. (*Compare* Dkt. No. 175-6 at 34–35 ¶¶ 112(A)–(H) (describing the wearable devices royalty rate as being based on the RoyaltySource Licenses as well as the apportionment analysis in Exhibits 1–2, and concluding that the royalty would likely be a function of overall revenue generated by wearable devices), *with* Dkt. No. 175-6 at 35 ¶¶ 113(A)–(G) (describing the handheld devices royalty rate as being based on two licenses described in "the ██████████████████

████████" as well as the ██████████ License, and concluding that the royalty would likely be based on "the quantity of handheld phones sold" rather than overall revenue)). Thus, even a complete exclusion of Mr. Rosenthal's wearable devices damages opinion would not operate as a "complete dismissal of the plaintiff's claims." *See CQ, Inc.*, 565 F.3d at 280 n.7. Even though the damages evidence is "clearly important" to Uniloc, *see id.*, that fact alone is not sufficient to avoid exclusion of the evidence. Accordingly, given Uniloc's ability to proceed to trial with a damages theory based on handheld devices, the Court finds that Factor 2 is neutral with respect to all four categories of testimony.

## C. Factor 3—Prejudice to Samsung

Throughout its briefing, Uniloc also repeatedly advances what the Court terms a "comparable access" theory of harmlessness in an attempt to mitigate the prejudice to Samsung. (*See, e.g.*, Dkt. No. 181 at 3, 5, 7–9; Dkt. No. 187 at 7). Specifically, Uniloc argues that Samsung cannot be prejudiced because Samsung (or its experts) had comparable access to the relevant information or because Samsung produced the relevant documents. (*See* Dkt. No. 181 at 3, 5, 7–9; Dkt. No. 187 at 7). In Uniloc's view, Samsung's comparable access to the documents and general awareness of such documents' existence is sufficient to neutralize any potential harm from Uniloc's late-breaking reliance. (*See* Dkt. No. 181 at 3, 5, 7–9; Dkt. No. 187 at 7). This is incorrect.

The fact that a document is equally accessible to both parties does not excuse a party's failure to timely disclose specific reliance upon it. *Martino v. Kiewit New Mexico Corp.*, 600 F. App'x 908, 911 (5th Cir. 2015) ("[The Plaintiff] attempts to justify his nondisclosure by claiming the USACE Contract was a public document, equally available to both parties. However, even if a document is publicly available or in the opposing party's possession, a party must still disclose it under Rule 26(a)(1)(A) to provide notice of evidence central to its claims or defenses."). While

Samsung may have been generally aware of the *existence* of various newly relied upon documents, Samsung also has a right under Rule 26 to be given fair notice of Uniloc's specific *reliance* on those documents. Samsung's general awareness of a document's existence is something that falls far short of a specific awareness that Uniloc intended to rely on a particular document for a particular purpose. *See id.* Accordingly, the Court rejects Uniloc's "equal access" theory of harmlessness.

### 1. Paragraph 40

The Court finds that Factor 3 favors exclusion of paragraph 40 of Mr. Rosenthal's 3/12/19 Amended Report. Uniloc improperly uses paragraph 40 as both a shield and a sword. Uniloc uses paragraph 40 as a sword in its *Daubert* briefing, where paragraph 40 is the *only* paragraph from Mr. Rosenthal's 3/12/2019 Amended Report that Uniloc cites in support of the technological comparability of the RoyaltySource Licenses. (Dkt. No. 187 at 7–8 (citing "Dkt. 184-2 at ¶ 40 A-D.")). However, Uniloc also used paragraph 40 as a shield when Mr. Rosenthal was deposed, because paragraph 40 relies upon the conclusory opinions expressed by Dr. Easttom in an untranscribed phone call. (*See* Dkt. No. 184-3 at 117:22–118:1). When pressed to justify the methodology described in paragraph 40, Mr. Rosenthal deferred the question and credibility challenge to Dr. Easttom, noting that the opinions belonged to Dr. Easttom and not himself, while suggesting that Samsung should ask Dr. Easttom for answers to the "lot of technical questions" which Samsung raised. (*See, e.g.*, *id.* at 120:11–124:11; 130:18–22; 131:3–132:8; 261:8–9). Uniloc thus uses paragraph 40 to attack Samsung's *Daubert* Motion, while simultaneously shielding paragraph 40 from criticism due to the absence of scrutiny.

Mr. Rosenthal's choice to side-step a credibility challenge via Dr. Easttom deprives Samsung of any meaningful opportunity to challenge the material in paragraph 40. Samsung had

no chance to depose Dr. Easttom. Dr. Easttom never discussed the material in paragraph 40 in any expert report. Further, to the extent Samsung could ask Dr. Easttom questions *for the first time at trial*, no serious trial lawyer would deny that Samsung's blind and first-time inquiries to an adverse witness would place Samsung at a significant disadvantage.

Particularly in view of Uniloc's dual use of paragraph 40 as both a sword and a shield, the Court finds that Factor 3 supports exclusion of paragraph 40 of Mr. Rosenthal's 3/12/19 Amended Report.

### 2. *Paragraphs 91–97*

The Court finds that Factor 3 supports striking paragraphs 91–97 and the chart collectively contained in Mr. Rosenthal's 3/12/19 Amended Report. Mr. Rosenthal's original report asserts in generalized and conclusory terms that Samsung would value the technology embodied in the '556 Patent. (Dkt. No. 175-3 at 25–26 ¶¶ 84–87). In clear contrast, paragraphs 91–97 offer a completely new quantitative and qualitative analysis that introduces multiple new bases for crediting Uniloc's argument, including a specific analysis of Samsung's S-Health application and Samsung's own internal documents. (Dkt. No. 175-6 at 27–28 ¶¶ 91–97). In view of their added specificity and sophistication, these late additions have the almost-certain effect of prejudicially bolstering Uniloc's credibility before the jury. Both the paragraphs and the chart provide Uniloc the commonsense credibility boost that accompanies quantification and specificity, thus prejudicing Samsung.

The prejudicial effect of paragraphs 91–97 and the chart is particularly magnified by Uniloc's heavy reliance on these new paragraphs in its *Daubert* briefing. (*See* Dkt. No. 187 at 11–15). Rather than relying on *any* content in Rosenthal's original report, Uniloc relies almost entirely on these paragraphs to justify its apportionment analysis when confronted with Samsung's

*Daubert* challenge. (*See id.*) As was true for the other categories of testimony, the Court finds that Uniloc uses its new additions for a second bite at the apple, in order to supplement the apparently otherwise insufficient content in the original report. Uniloc's efforts to argue that paragraphs 91–97 are essentially identical to the content in Mr. Rosenthal's original report is belied by the fact that Uniloc chooses not to rely on *any* content from the original report in rebuffing Samsung's *Daubert* challenges.

Accordingly, the Court finds that Factor 3 supports striking paragraphs 91–97 of Mr. Rosenthal's 3/12/19 Amended Report.

### 3. Paragraph 108 and Exhibits 1–2

The Court finds that Factor 3 supports striking paragraphs 108(B) and Exhibits 1–2. Uniloc expressly concedes the basic premise that demonstrates prejudice to Samsung: Uniloc made these changes to respond to Samsung's initial *Daubert* criticisms, rather than in response to this Court's order. (Dkt. No. 181 at 8). The Court finds that Paragraph 108 and Exhibits 1–2 constitute an unfair redo of Uniloc's apportionment analysis, with no relation to or justification from the Court's order granting a limited leave to amend. Finally, Uniloc's heavy reliance on these new additions in its *Daubert* briefing demonstrates the prejudice of allowing Uniloc to add new arguments to its case so close to trial.

### 4. Certain New Documents in Appendix D

The Court finds that Factor 3 supports striking the new documents inserted into Appendix D of Mr. Rosenthal's 3/12/19 Amended Report. As with Paragraph 108(B) and Exhibits 1–2, Uniloc also concedes that it introduced a number of these documents in an effort to evade Samsung's *Daubert* arguments. (Dkt. No. 181 at 8 – 9). Uniloc's late-breaking reliance upon these documents is especially prejudicial because Uniloc had months in which it could have sought leave

to amend Mr. Rosenthal's report to address these documents. Despite having months to do so, Uniloc chose not to seek leave to amend. Uniloc's choice not to include these documents created a reasonable expectation for Samsung that these documents would not form the basis for any of Mr. Rosenthal's analysis. The Court finds that Uniloc's attempt to introduce this new material is unfairly prejudicial in a substantive sense, as well as untimely in a procedural sense.

Accordingly, the Court finds that Factor 3 supports striking the certain new documents included in Appendix D to Mr. Rosenthal's 3/12/19 Amended Report.

### D. Factor 4—Availability of a Continuance

The Court finds that the analysis for Factor 4 is the same for all four categories of testimony. Factor 4 favors excluding each category of testimony because trial is imminent. Jury selection is set to begin in six days, and this Court has already continued the trial date, as noted previously. Further, Uniloc has already had a fair opportunity to cure its damages report. When the Court granted summary judgment, it exercised its discretion in an equitable manner to give Uniloc a chance to amend its damages report rather than facing wholesale exclusion for failure to differentiate pre-complaint and post-complaint damages. The Court could have done otherwise, but it did not. Instead, the Court ordered Samsung to comply with a highly compressed schedule in order to give Uniloc a full opportunity to present its case in a manner fairly adjusted to the Court's summary judgment ruling. Uniloc chose to take that opportunity and misapply it by exceeding the clear parameters specified by the Court. Accordingly, the Court finds that Factor 4 favors excluding all four categories of testimony.

## E. Collective Analysis

The Court has weighed and considered the four factors guiding its "broad discretion" in fashioning a remedy pursuant to Fed. R. Civ. P. 37. *See CQ, Inc.*, 565 F.3d at 280; *Passmore*, 823 F.3d at 294–95, 296–97. Based on the above, the Court finds and **ORDERS** the following with respect to Mr. Rosenthal's 3/12/19 Amended Report.

- The Motion to Strike **paragraph 40** is **GRANTED**. The prejudice (Factor 3) combined with the lack of a justification for adding the new material contained in paragraph 40 (Factor 1) both justify exclusion. There is no countervailing factor that mitigates the heavy weight of Factors 1 and 3—Factor 2 is neutral and Factor 4 also supports exclusion.

- The Motion to Strike **paragraphs 91–97 and the chart located at Dkt. No. 175-6 at 28** is **GRANTED**. Uniloc offers no justification for these new additions (Factor 1), and the Court finds that Samsung would be prejudiced if Uniloc were allowed to reconstitute Mr. Rosenthal's opinion with late-breaking justifications for its analysis (Factor 3). There is no countervailing factor that mitigates Factors 1 and 3—Factor 2 is neutral and Factor 4 also supports exclusion.

- The Motion to Strike **paragraph 108** is **GRANTED-IN-PART** and **DENIED-IN-PART**. Paragraph 108(A) contains text taken verbatim from the original Rosenthal report and is accordingly not subject to exclusion under Rule 37. The Motion to Strike is **DENIED** in that regard. However, the Court finds that paragraph 108(B) should be stricken because Uniloc admits that the amendments in paragraph 108(B) were made to benefit its litigating position,

rather than to effectuate the Court's limited grant of leave (Factors 1 and 3). There is no countervailing factor that mitigates Factors 1 and 3—Factor 2 is neutral and Factor 4 also supports exclusion. Finding no justification by Uniloc and material prejudice to Samsung, the Court **STRIKES** paragraph 108(B). In this regard, the Motion to Strike is **GRANTED**.

- The Motion to Strike **Exhibits 1–2** is **GRANTED** for the same reasons that paragraph 108(B) is **STRICKEN**.

- The Motion to Strike the **74 new documents, two new patent applications, and the deposition transcript and exhibits of Arthur Kinsolving as listed in Appendix D** is **GRANTED**. Uniloc concedes that the documents are new, and presents no argument that addition of the documents is related to or within the scope of the Court's order (Factor 1). Instead, Uniloc again admits that its amendments function to benefit its litigating position rather than to effectuate the Court's instructions (Factors 1 and 3). There is no countervailing factor that mitigates Factors 1 and 3—Factor 2 is neutral and Factor 4 also supports exclusion.

In its response to Samsung's Motion to Strike, Uniloc requested *further* leave to amend, to the extent the Court found that Uniloc's changes went beyond the Court's prior order granting leave to amend. (Dkt. No. 181 at 2). For the reasons described in the preceding Sections III.A–E, the Court **DENIES** Uniloc's request for further leave to amend.

## IV.    Samsung's *Daubert* Motion

In view of the Court's Order **GRANTING** Samsung's Motion to Strike, the Court next turns to Samsung's *Daubert* Motion. Here, Samsung raises five issues for consideration by the Court. First, Samsung seeks to preclude Mr. Rosenthal's reliance on the four RoyaltySource Licenses as insufficiently comparable to the '556 Patent. Second, Samsung seeks to preclude Mr. Rosenthal's reliance on the ███████████ License as insufficiently comparable to the '556 Patent. Third, Samsung seeks to strike Mr. Rosenthal's damages opinion with respect to wearable devices for failure to apportion down to the value of the '556 Patent. Fourth, Samsung seeks to exclude Mr. Rosenthal's wearable devices damages opinion based on the Entire Market Value Rule. Fifth, Samsung seeks to preclude Mr. Rosenthal from describing various overall revenue projections. The Court addresses each argument in turn, and combines issues three and four because they rise or fall together in context of this case.

### A. RoyaltySource Licenses

Samsung asks the Court to exclude four licenses identified by Uniloc as comparable through use of the commercial RoyaltySource database. (Dkt. No. 184 at 6). Mr. Rosenthal relies on the RoyaltySource Licenses in support of his opinion describing "the royalty for wearables." (Dkt. No. 175-6 at 34(B), (F)). Samsung argues that the RoyaltySource Licenses are not economically comparable to the '556 Patent because those licenses involve unrelated patents, additional rights (such as source code), or parties who did not bargain at arm's length. (Dkt. No. 184 at 6–9). Samsung further argues that the RoyaltySource Licenses are not technologically comparable because they do not involve the '556 Patent and Uniloc's only evidence of comparability—paragraph 40 of Mr. Rosenthal's 3/12/19 Amended Report—is substantively unreliable. (*Id.* at 3–4).

Uniloc offers three reasons why the Court should find there is sufficient evidence of technological comparability. First, Uniloc relies on the discussion in paragraph 40 of Mr. Rosenthal's 3/12/19 Amended Report. (Dkt. No. 187 at 7–8). Notably, paragraph 40 is the *only* portion of Mr. Rosenthal's report that addresses the technological comparability of the RoyaltySource Licenses. Second, Uniloc argues that the RoyaltySource database itself constitutes inherent evidence of comparability because the RoyaltySource database filters out irrelevant agreements and only furnishes relevant agreements. (*Id.* at 8). Third, Uniloc argues that the RoyaltySource Licenses are "on their face, very clearly and closely related to the '556 patent." (*Id.*)

In order "to establish a reasonable royalty, the 'licenses relied on by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at issue in suit.'" *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) (alterations in original) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009)). Ordinarily and in the large majority of cases, the comparability of a license relied upon by a patentee is a question of fact for the jury. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("The degree of comparability of the . . . . license agreements as well as any failure on the part of ActiveVideo's expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion."). However, a patentee may not rely on licenses for which there is a *complete* absence of evidence showing a "link to the claimed technology." *VirnetX*, 767 F.3d at 1330 (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010)); *accord Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1304 n.2 (Fed. Cir. 2015) (noting that the Federal Circuit has recognized exclusion of a license may be appropriate based on "the patented technology's lack of a relationship to the

licensed technology"). Thus, when a patentee's expert offers "no evidence of a link between the . . . [purportedly comparable] licenses and the claimed invention," exclusion may be appropriate. *ResQNet.com*, 594 F.3d at 871.

The Court finds that exclusion of the four RoyaltySource Licenses is appropriate in this case because there is no remaining evidence that the RoyaltySource Licenses are technologically comparable to the '556 Patent.[6] The RoyaltySource Licenses do not themselves concern the '556 Patent, and instead cover various other patents and rights. Uniloc has not identified any evidence showing that any of the patents contained in the RoyaltySource Licenses have a "link to the claimed technology" in the '556 Patent. *See VirnetX*, 767 F.3d at 1330 (quoting *ResQNet.com*, 594 F.3d at 870). As in *ResQNet.com*, Mr. Rosenthal offers "no evidence of a link between . . . the licenses and the claimed invention" and Uniloc identifies no other evidence upon which the Court could rely. *See ResQNet.com*, 594 F.3d at 871. Thus, the Court finds that there is a complete absence of evidence demonstrating that the RoyaltySource Licenses are technologically comparable to the '556 Patent.

Turning to Uniloc's arguments, the Court rejects each of Uniloc's arguments that the RoyaltySource Licenses should survive scrutiny under *Daubert*.

With respect to Uniloc's first argument, based on paragraph 40 of Rosenthal's 3/12/19 Amended Report, the Court does not reach this question because this Order has stricken paragraph 40 pursuant to Fed. R. Civ. P. 37. Since the Court has stricken paragraph 40, it cannot support for Mr. Rosenthal's opinion.

_____

[6] The Court does not evaluate whether paragraph 40 of the 3/12/19 Amended Report would be sufficient to survive scrutiny under *Daubert* in view of the Court's Order striking paragraph 40 pursuant to Fed. R. Civ. P. 37. *See discussion supra* Section III.E. However, the Court rejects Samsung's argument that the RoyaltySource Licenses are not economically comparable because Samsung's objections go to the weight rather than the admissibility of those licenses. *See ActiveVideo*, 694 F.3d at 1333.

Uniloc's second argument falls for a similar reason: Mr. Rosenthal's 3/12/19 Amended Report does not indicate that the RoyaltySource database confers inherent reliability or comparability to the licenses it identifies. Indeed, Mr. Rosenthal's report offers "no evidence" directly addressing whether the RoyaltySource database uses an inherently reliable methodology. *See ResQNet.com*, 594 F.3d at 871. To the contrary, to the extent Mr. Rosenthal's 3/12/19 Amended Report addresses some screening process done by the RoyaltySource database, the report affirmatively states that the RoyaltySource database identified at least one license that was "*not* . . . comparable to the '556 Patent." (*See* Dkt. No. 175-6 at 12 ¶ 40(C) (claiming that the third license identified by the RoyaltySource database was not comparable to the '556 Patent) (emphasis added)).

Uniloc's third argument—attorney argument that the licenses "are, on their face," comparable—fails for complete lack of evidentiary support. Attorney argument cannot substitute for an absence of admissible evidence demonstrating that the licenses are comparable. Particularly for licenses covering sophisticated, highly-technical multicomponent products and patents, such as those involved in this case, the Court finds that comparability presents a "scientific, technical" question that requires "specialized knowledge" and is thus appropriately the province of expert testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–90 (1993). The absence of expert testimony connecting the RoyaltySource Licenses to the '556 Patent is fatal to Uniloc's reliance upon those licenses in this case.

Accordingly, based on a finding that Uniloc has offered "no evidence of a link between . . . the [RoyaltySource] licenses and the claimed invention," *see ResQNet.com*, 594 F.3d at 871, the Court **GRANTS** Samsung's *Daubert* Motion with respect to all four RoyaltySource Licenses, which are hereby **EXCLUDED** and **STRICKEN**.

A necessary consequence of this Order is that Mr. Rosenthal's damages opinion with respect to the wearable devices must be completely stricken under *Daubert*, because the Court has stricken Uniloc's only bases for that opinion. The 3/12/19 Amended Report discloses two bases for the ███ royalty rate for the wearable devices: (1) the RoyaltySource Licenses and (2) the combined analysis in Exhibits 1–2. (*See* Dkt. No. 175-6 at 34–35 ¶¶ 112(A)–(H) (describing the report's "analysis for the royalty for wearables")). This Order strikes Exhibits 1–2 pursuant to Fed. R. Civ. P. 37 and strikes the RoyaltySource Licenses for lack of technological comparability. Since the Court has stricken every basis disclosed in the 3/12/19 Amended Report for the royalty concerning wearable devices, the Court finds that Mr. Rosenthal's wearable damages opinion must be and hereby is **STRICKEN** in its entirety. Accordingly, finding no remaining basis in support of the ███ royalty rate for wearable devices, the Court **STRIKES** the ███ royalty rate for wearable devices, including without limitation paragraphs 112 and 114(A) of Mr. Rosenthal's 3/12/19 Amended Report.

**B.** ███████████ **License**

Samsung asks the Court to exclude a ███ license between █████████████████████ ████████████████████████████████████ which covers the '556 Patent ("the ██████ License"). Mr. Rosenthal relies on the ███████████ License to inform his analysis "for the royalty for handheld phones." (Dkt. No. 175-6 at 35 ¶ 113(E)). Samsung makes three arguments in support of its request to strike the ███████████ License. First, Samsung argues that Mr. Rosenthal failed to consider the original ███████████ license agreement, which provided for a ███████ ███. Second, Samsung argues that Mr. Rosenthal failed to account for the fact that the ███████ ████████ purportedly did not bargain at arm's length. Third, Samsung argues that Mr. Rosenthal

failed to control for certain additional variables, such as other patents or services covered by the ██████████ License.

Uniloc responds that all of Samsung's objections go to the weight rather than the admissibility of the ████████ License. With respect to Samsung's first point, Uniloc argues that the ████████████ License expressly ████████████████████████

████████████████████████████████████████████████████

(Dkt. No. 187 at 9). Next, Uniloc argues that the license agreement itself provides that the parties bargained at arm's length. Uniloc notes that "the agreement's express language" describes "the relationship of the Parties" as "independent contractors." Finally, Uniloc answers Samsung's third point with a Federal Circuit case that rejected essentially identical arguments. *See ActiveVideo*, 694 F.3d at 1333.

The Court finds that all of Samsung's objections go to the weight rather than the admissibility of the ████████ License. Samsung's arguments reflect factual conflicts in the evidence or methodology disputes that are appropriate for cross-examination. *See id.* ("[A] party's quarrel with the facts the damages expert used go[es] to the weight, not admissibility, of the expert's opinion.") (citing *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011)). While Samsung may attempt to criticize Mr. Rosenthal for some "failure . . . to control for certain variables," *see id.*, those arguments present "factual issues best addressed by cross-examination and not by exclusion." *Id.*

Accordingly, the Court **DENIES** Samsung's *Daubert* Motion with respect to the ██████████ License.

## C. Apportionment and the Entire Market Value Rule (EMVR)[7]

Samsung argues that the Court should exclude Mr. Rosenthal's damages opinion with respect to wearable devices because Mr. Rosenthal's 3/12/19 Amended Report fails to apportion for the value of the '556 Patent. Specifically, Samsung argues that its wearable devices are a "multi-component product" requiring apportionment for the value specifically added by the '556 Patent, and that Uniloc has failed to appropriately apportion. Dkt. No. 184 at 14. Uniloc responds that its 5% royalty rate is based on a combination of two forms of apportionment—the apportionment contained in Exhibits 1–2 and paragraphs 91–97 of Mr. Rosenthal's 3/12/19 Amended Report.

"[W]here multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). That rule provides the basis for "an important evidentiary principle" that requires expert testimony to apportion for the value added by a patent.[8] *Id.*

---

[7] The Court groups these two arguments because they rise or fall upon the same basis. In general, both turn on whether the patentee has appropriately separated out the value attributable to the patent-in-suit. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) (recognizing that the EMVR is not a "rule" in the sense of an inflexible requirement and instead explaining that the EMVR should function as a guideline in identifying the value added by a patent). In this case, the Court's decision with respect to apportionment and the EMVR turn on the Court's exclusion of the newly added material in the 3/12/19 Amended Report and Uniloc's failure to identify any other basis for separating out the '556 Patent's added value.

[8] Nothing in this opinion should be taken to cast doubt on the well-established rule that experts may also rely on comparable licenses, even when those licenses rely on the "market value of the entire product." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1349 (Fed. Cir. 2018); *see also Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303–04 (Fed. Cir. 2015) [hereinafter *CSIRO*]; *Sprint Commc'ns Co. v. Time Warner Cable, Inc.*, No. 2017-2247, 2019 WL 1319978, at *5 (Fed. Cir. Mar. 18, 2019). In this case, however, the Court has stricken the RoyaltySource Licenses, which are the only licenses relied upon by Uniloc in support of its royalty rate for wearable devices. Accordingly, the holding of *CSIRO*, which permits a patentee to rely upon comparable licenses rather than the smallest salable patent-practicing unit, does not apply to this case.

The Court has stricken both bases of apportionment identified by Uniloc. There is no other basis for apportionment. Accordingly, the Court **GRANTS** Samsung's *Daubert* Motion and **EXCLUDES** Uniloc's damages theory based on wearable devices.[9]

### D. Total Revenue Projections

Samsung asks the Court to exclude various overall revenue totals, including Samsung's overall revenues that include sales of non-accused products. Samsung asks the Court to strike the references to these revenue totals that appear in paragraphs 74–76 and 81–86 of Mr. Rosenthal's 3/12/19 Amended Report. Uniloc does not discuss nor does it oppose this portion of Samsung's *Daubert* Motion in its response.

District courts have discretion to exclude overall product revenues that include non-accused products. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012). "Admission of such overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'" *Id.* However, if an overall revenue total is proper as the basis for a damages opinion—as may be the case when a party relies upon comparable licenses that work from an overall revenue total—then district courts may not exclude reference to that revenue total. *See Exmark Mfg.*, 879 F.3d at 1349; *CSIRO*, 809 F.3d at 1303–04; *Sprint Commc'ns*, 2019 WL 1319978, at *5.

---

[9] This apportionment ruling is coextensive with the Court's ruling articulated in Section IV.A which struck Uniloc's ▮ royalty rate for lack of support in view of the material struck by this Order. The apportionment ruling contained in this Section IV.C provides an independent, alternative basis for excluding Uniloc's ▮ royalty rate for wearable devices.

The Court **GRANTS** Samsung's *Daubert* Motion with respect to Mr. Rosenthal's 3/12/19 Amended Report and overall Samsung revenues as follows:

- **Paragraphs 74–75.** The Court **STRIKES** paragraph 74 at chart row two in its entirety ("Handheld—Sales"), row four in its entirety ("Gear—Sales"), row five in its entirety ("Total Sales") and paragraph 75. As Mr. Rosenthal's 3/12/19 Amended Report itself notes, the ███ ██████████ of projected overall revenue, as listed in paragraphs 74 and 75, includes "all Samsung devices" rather than only those devices that are accused of infringing. (Dkt. No. 175-6 at 24 ¶ 75).

- **Paragraph 76.** The Court **STRIKES** paragraph 76, which lists the total revenue for devices that allegedly infringe the '556 Patent as ████████████████. Uniloc has declined to respond to Samsung's argument to provide any basis for referencing the overall total of ███████████. Further, the Court has stricken Uniloc's wearable devices damages opinion, so damages based upon those devices should be excluded. Finally, Uniloc's damages theory for handheld devices is wholly unrelated to the overall revenue for handheld devices, and instead "would likely be a per-unit royalty". (Dkt. No. 175-6 at 35 ¶ 113). Uniloc's own report discloses that it is not the overall revenue for handheld devices that matters to Uniloc's damages theory, but instead it is the number of devices sold that would affect the theory. Uniloc discloses no theory of damages for handheld devices that relies upon the total revenue. (*Id.* ¶¶ 113(F), (G) & n.57) (explaining that the per-unit damages rate for handheld devices is a function of (1) the average of several comparable licenses and (2) the number of handheld devices sold). In view of the Court's Order striking identified new material in Mr. Rosenthal's 3/12/19 Amended Report, Uniloc's

failure to reply to Samsung's motion with a rationale for relying on the overall revenue totals, and the 3/12/19 Amended Report's failure to rely on the overall revenue totals in calculating damages for handheld devices, the Court finds no basis for retaining the paragraph 76. Accordingly, the Court **STRIKES** paragraph 76.

- **Paragraph 81.** The Court **STRIKES** paragraph 81 because it repeats the ██ ███████ overall revenue projection that was stricken from paragraphs 74–75.

- **Paragraph 82.** The Court **STRIKES** paragraph 82 for the same reasons paragraph 76 was stricken.

- **Paragraphs 83–84**. The Court will not strike paragraphs 83–84 because they do not contain any reference to revenue totals. While the paragraphs do suggest that Samsung's handheld devices were popular with consumers, the complete absence of any reference to "overall product revenues" makes it unlikely that the information disclosed would inevitably "skew the damages horizon for the jury, regardless of . . . cross-examination [and] a curative jury instruction." *LaserDynamics*, 694 F.3d at 68 (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)). Accordingly, the Court finds that paragraphs 83–84 should not be stricken, and in this regard the *Daubert* Motion is **DENIED**.

V. <u>Conclusion</u>

This Order jointly addresses Samsung's Motion to Strike (Dkt. No. 175) and Samsung's *Daubert* Motion (Dkt. No. 184). For the foregoing reasons, the Court finds that the Motion to Strike should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth herein. Based on its review of the appropriate factors, *see CQ, Inc.*, 565 F.3d at 280, the Court **GRANTS** the Motion to Strike with respect to paragraphs 40, 91–97, 108(B), Exhibits 1 and 2,

and certain documents in Appendix D of Mr. Rosenthal's 3/12/19 Report. The Court **DENIES** the Motion with respect to paragraph 108(A) of Mr. Rosenthal's 3/12/19 Report. Further, based on the above analysis, including the Court's Order addressing the Motion to Strike, the Court finds that the *Daubert* Motion should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth herein**.** The Court **GRANTS** the *Daubert* Motion with respect to the RoyaltySource Licenses, the issue of apportionment and the Entire Market Value Rule, and the references to Samsung's overall revenue projections and totals in Mr. Rosenthal's 3/12/19 Amended Report. The Court **DENIES** the *Daubert* Motion with respect to the ████████████ License.

**SIGNED this 19th day of December, 2011.**
**So ORDERED and SIGNED this 17th day of April, 2019.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE