REDACTED BY ORDER OF THE COURT

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE EASTERN DISTRICT OF TEXAS

 3                      MARSHALL DIVISION

 4   UNILOC USA, INC., ET AL.      )(

 5                                 )(     CIVIL ACTION NO.

 6                                 )(     2:17-CV-651-JRG

 7   VS.                           )(     MARSHALL, TEXAS

 8                                 )(

 9   SAMSUNG ELECTRONICS AMERICA,  )(     MARCH 4, 2019

10   INC., ET AL.                  )(     10:12 A.M.

11                       PRE-TRIAL HEARING

12          BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP

13             UNITED STATES CHIEF DISTRICT JUDGE

14

15   APPEARANCES:

16   FOR THE PLAINTIFFS:(See Attorney Attendance Sheet docketed
                         in minutes of this hearing.)
17

18   FOR THE DEFENDANTS:(See Attorney Attendance Sheet docketed
                         in minutes of this hearing.)
19

20   COURT REPORTER:    Shelly Holmes, CSR, TCRR
                        Official Reporter
21                      United States District Court
                        Eastern District of Texas
22                      Marshall Division
                        100 E. Houston Street
23                      Marshall, Texas  75670
                        (903) 923-7464
24

25   (Proceedings recorded by mechanical stenography, transcript
     produced on a CAT system.)
```

```
 1                        I N D E X

 2

 3   March 4, 2019

 4                                                Page

 5        Appearances                               1

 6        Hearing                                   3

 7        Court Reporter's Certificate            111

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              COURT SECURITY OFFICER:  All rise.

 2              THE COURT:  Be seated, please.

 3              All right.  This is the time set for a hearing

 4  before the Court on pre-trial matters in the Uniloc versus

 5  Samsung case.  This is Civil Action 2:17-CV-651.

 6              The Court will call for announcements at this

 7  time.

 8              What says the Plaintiff, Uniloc?

 9              MR. DAVIS:  Good morning, Your Honor.  Bo Davis on

10  behalf of the Plaintiff, Uniloc.  With me today is

11  Mr. Brian Tollefson, Mr. Mike Ercolini.  We're ready to

12  proceed, Your Honor.

13              THE COURT:  All right.  I see you filed a notice

14  of appearance this morning, Mr. Davis.

15              MR. DAVIS:  I did, Your Honor.

16              THE COURT:  All right.  Welcome to the case.

17              MR. DAVIS:  Thank you.

18              THE COURT:  What's the announcement for the

19  Defendants Samsung?

20              MS. SMITH:  Good morning, Your Honor.  Melissa

21  Smith on behalf of Samsung.  I'm joined today by Mr. Rich

22  Edlin, Mr. Allan Kassenoff, Ms. Valerie Ho, Ms. Janice Ye,

23  and we also have some client representatives in the

24  courtroom today, Mr. Ken Korea and Mr. Jeff Myung.  And

25  we're ready to proceed, Your Honor.
```

1          THE COURT:  Thank you, Ms. Smith.

2          All right.  Counsel, before we get into the

3  actually disputed pre-trial matters, let me go over some

4  preliminary matters and share some information with you

5  that I want to make sure you're aware of.

6          As everyone should know, this case is set for jury

7  selection and trial to begin on Monday, April the 1st of

8  this year at 9:00 a.m.

9          The Court intends to have the clerk play the FJC

10 patent video for the venire panel prior to jury selection.

11         Each side is going to be afforded 30 minutes per

12 side to address the panel as a part of voir dire.

13         As is the Court's typical practice, each side may

14 use, at its discretion, up to three minutes of its time for

15 a very high level, non-argumentative barebones review of

16 the issues that are encompassed in the case.  But the vast

17 majority of your time should be used with regard to

18 directing specific questions to the panel, listing

19 information to secure a fair and impartial jury to hear the

20 evidence in this case.

21         With regard to the three-minute or less

22 introduction, if at any point I believe that gets to be

23 argumentative, I will stop you in front of the panel, so

24 make sure it's not.

25         I'm going to seat eight jurors to hear this case,

1  and each side will be afforded four peremptory challenges.

2        As I say, trial is set to begin here in the

3  Marshall Division on April the 1st at 9:00 a.m.  Each side

4  will be afforded 10.5 hours to put on their evidence, not

5  including opening statements or closing arguments.

6        Opening statements will be 30 minutes per side.

7  And I remind counsel, these are opening statements.  They

8  are not opening arguments.  I seem to have had a rash of

9  cases lately where opening statements become a preliminary

10  final argument, and that's not what is expected by the

11  Court.  You're there in openings to give the jury an idea

12  of what the evidence may show, not to argue ultimate

13  conclusions with regard to evidence that hasn't been

14  presented yet.

15        So if this trend continues, I may have to

16  interject some guidance to counsel during opening

17  statements.  So perhaps this is the case that will help

18  break the trend and get it back on track.

19        30 minutes per side for opening statements.  30

20  minutes per side for closing.

21        Plaintiff can certainly break and use alternate

22  counsel on their closing if they'd like to.  The only rule

23  for Plaintiffs' closing arguments is they must use at least

24  50 percent of their time in their first closing argument.

25        During the course of the trial, the Court will be

1  in chambers each morning by 7:30 and available to meet with

2  counsel to take up any late arriving disputes, issues that

3  haven't been resolved through the meet and confer process

4  overnight, or any other housekeeping matters that arise.

5        That will maximize the use and benefit of the

6  designated trial time before the jury.

7        You're to exchange demonstratives with each other

8  overnight and report to the Court by email by 10:00 p.m. as

9  to which disputes have not been resolved through your

10 efforts to meet and confer.

11       Also, the Court has found that those 10:00 o'clock

12 emails tend to often obscure part of what is really at

13 issue, and oftentimes by 7:30 the next morning, a fair

14 portion of what's in the 10:00 o'clock email has been

15 resolved by continuing efforts to meet and confer.

16       Consequently, I've found that requiring the

17 parties to deliver a jointly prepared binder at 7:00

18 o'clock the next morning showing what's still at issue

19 since 10:00 o'clock the night before and including both

20 sides' supporting arguments and evidence is most helpful.

21 So I'm going to invoke that as a part of this trial, as

22 well.

23       So a joint submission in a three-ring binder by

24 7:00 o'clock the morning after you've met and conferred and

25 reported to the Court at 10:00 p.m. will be required.

1        With regard to any possible disputes regarding

2   deposition designations or counter-designations, those two

3   should be exchanged and discussed.  However, in that

4   regard, I will take those on a rolling basis with the

5   requirement that they be presented and -- and discussed and

6   either resolved or left unresolved not later than the day

7   before the day you intend to use the deposition.

8        I don't want deposition disputes to come in at

9   7:30 in the morning, and, oh, we have to delay the trial

10  while we recut the video.  So those need to come into the

11  Court, if they can't be resolved, not later than the day

12  before the day they intend to be played.

13       Also, it's my practice, unlike some courts, that I

14  will hear motions under Rule 50(a) by the Defendant not at

15  the close of the Plaintiffs' case-in-chief, but I'll hear

16  motions under Rule 50(a), both from the Defendant and any

17  motions offered by the Plaintiff, after all the evidence

18  has been presented and completed.  After the Plaintiff has

19  rested its case-in-chief, the Defendants rested its

20  case-in-chief, and the Plaintiffs presented any rebuttal

21  case, then I'll take up motions under Rule 50(a) from both

22  sides.

23       After I've heard and ruled on motions under Rule

24  50(a), then the Court will conduct in chambers an informal

25  charge conference to meet with counsel and have an open,

1  informal, and fulsome discussion regarding differing issues

2  between the parties concerning the proposed final jury --

3  final jury instructions from the Court to the jury and the

4  verdict form.

5         After we've completed that informal charge

6  conference, the Court will take the input from both sides,

7  consider it, and generate what it believes to be the

8  appropriate final jury instruction and verdict form,

9  present those to counsel for their review, and then conduct

10  a formal charge conference on the record where either side

11  may offer such objections for purposes of the record that

12  they believe are appropriate and necessary.

13         With the arrival of Mr. Davis, both sides have

14  experienced local counsel in the case, and I think that's a

15  very positive development.

16         And I know local counsel are aware of this, but so

17  that there's no doubt, it's this Court's practice to

18  prohibit references to individuals before the jury by first

19  name only.  Witnesses should not testify about Jack or John

20  or Jane or Jill.  A lawyer should not refer to Robert or

21  Sarah or Elizabeth.  First names only are inherently

22  confusing in the record, and they're not an appropriate

23  maintenance of the Court's necessary decorum.

24         Don't refer to individuals -- any individuals by

25  first name only in the presence of the jury and insist that

1    your witnesses follow that same practice.

2           Also, it's highly likely that in this case, there

3    will be sensitive or proprietary confidential information

4    that's necessary to be presented to the jury.  I'll refer

5    you to the Court's standing order on sealing the courtroom

6    as the method to ensure that such information is protected.

7           It's my request and hope that you can collect and

8    present such confidential information at more or less one

9    time in your examination, if that's possible.

10          What I'm trying to avoid is a series of questions

11   that involve confidential information for which we seal the

12   courtroom, then we unseal the courtroom, a short series of

13   questions that don't involve any confidential information,

14   and then we go back to confidential information and seal

15   the courtroom again, and this on and off process becomes

16   highly disruptive.

17          To the extent you can collect and coalesce around

18   confidential information and present it without so many

19   breaks and disruptions, that certainly will be appreciated

20   by the Court.

21          But I do intend to follow the mechanism outlined

22   in my standing order for sealing the courtroom to address

23   and protect confidential information which will also seal

24   that portion of the record, as well.  And that portion of

25   the record being sealed through the use the Court's

1   standing order should alleviate the need for post-trial

2   redactions.  And I don't anticipate a broad-based or active

3   post-trial redaction practice by the parties.

4        To the extent there's a juror questionnaire in

5   this case, I refer you to the deputy in charge.  To the

6   extent we haven't -- and I'm trying to remember.  Has there

7   been a -- has there been a juror questionnaire submitted at

8   this point?  I don't recall seeing one.

9        Are you aware of one --

10       MS. SMITH:  No, Your Honor.

11       THE COURT:  -- Ms. Smith?

12       Okay.  Well, to the extent the parties want to

13   take advantage of using a juror questionnaire, then I'll

14   refer you to the deputy in charge for this division,

15   Ms. Clendening.

16       Also, I have a standing order on what's permitted.

17   You need to have a proposed juror questionnaire to her in

18   time for me to review it and in time for her to send it out

19   with the summons for the panel that will appear on April

20   the 1st.

21       Making sure that that's done timely so that it can

22   be delivered with the summons to the venire members is your

23   burden.

24       But you should find direct guidance on the makeup

25   of the questionnaire as a part of the Court's standing

1   order.

2           And once those questionnaires are returned, you

3   will need to consult with Ms. Clendening as to their

4   delivery to you prior to venire -- excuse me, prior to voir

5   dire.

6           Also, I want to make it clear that with regard to

7   the use of any such returned and completed juror

8   questionnaires, those documents and the material therein

9   are not to be copied or retained or scanned or reproduced.

10          We represent to those citizens summoned for jury

11  duty who receive such a questionnaire, that they do not

12  need to worry about law firms keeping and retaining their

13  particular answers or responses.  And so to do that, it's

14  incumbent that both sides not copy, retain, scan, or

15  otherwise maintain any of that information, other than

16  implementing and using the hard copies that the clerk's

17  office will give you in advance of the voir dire and which

18  should be returned after the jury is selected so they can

19  be destroyed and shredded.

20          We're going to use as much of the day as necessary

21  to get through as much of the pre-trial in this case as we

22  can today.

23          I will let you know that I've reserved time on

24  Tuesday, the 26th of March, for a follow-up pre-trial,

25  assuming it's necessary, beginning at 9:00 a.m. that day.

1  If we can cover everything today, fine.  If we can't, then

2  our next chance at covering any remaining pre-trial issues

3  will be on March the 26th.

4          I'll also follow the same practice in this case

5  that I use in most trials, and that is that we will take

6  up and consider disputes regarding the admissibility of

7  exhibits as a part of the pre-trial process, and I'll

8  rule on those admissibility arguments and disputes such

9  that we can complete the pre-trial process with a defined

10  and finite list of pre-admitted exhibits, those exhibits

11  being ones for which there was no challenge as to their

12  admissibility or that the challenge was overruled by the

13  Court after considering the arguments on admissibility.

14          Those pre-admitted exhibits will then be able to

15  be used without a formal offer or any time consuming

16  introduction during the trial before the jury, but we will

17  keep a rolling account of those items used before the jury

18  in the record by having both sides announce before I bring

19  the jury in each morning, beginning on the second day of

20  the trial, those items that have been used from the list

21  during the preceding day's portion of the trial.

22          I typically take the exhibit disputes up as the

23  last matter in the pre-trial process, quite honestly,

24  because many of those disputes will fall away after you get

25  the benefit of my rulings on the dispositive motions and

1  the motions in limine.  And that will be the practice I

2  follow here.

3          Whether we get here today or not or that carries

4  over until March the 26th remains to be seen.

5          I'm going to direct that the parties jointly

6  prepare in this case and submit to the Court juror

7  notebooks for use by the jury during the trial.

8          Those juror notebooks should be -- as typically

9  used in a patent infringement case in this court, they

10  should be appropriate sized three-ring binders containing a

11  copy of the patent-in-suit, a copy of the claim

12  construction terms that the Court has construed on a

13  side-by-side comparison with the claim terminology on the

14  left margin -- on the left column, rather, and the adopted

15  construction by the Court corresponding on the right

16  column.

17          There -- this is not a reproduction of the claim

18  construction order.  There's no text or analysis to be

19  included, simply the net result, disputed term on one side

20  and adopted construction on the other side.

21          To the extent terms were not construed by the

22  Court or were construed by the Court to be their plain and

23  ordinary meaning, then they don't need to be included in

24  this chart because any language not expressly construed

25  otherwise is going to receive its plain and ordinary

1    meaning during the course of the trial.

2         Additionally, these notebooks should include

3    tabbed pages for each of the witnesses that may appear,

4    either live or by deposition, including a

5    head-and-shoulders photograph of the witness superimposed

6    at the top of each page with their appropriate and complete

7    name identifying them listed below the photograph.

8         They shouldn't be characterized or identified

9    other than by name.  It's appropriate below the photograph

10   to have Dr. John Jones.  It's not appropriate to have

11   Dr. John Jones, Plaintiffs' expert on damages.

12        So identify them by appropriate name only.  The

13   remainder of those pages should be simply ruled lines for

14   possible note taking.

15        And in addition to the note taking that may take

16   place on those witness pages, you should also include in

17   the back of these notebooks a new three-hole punched legal

18   pad for note taking purposes.  And you should place in the

19   front pocket of each notebook a non-clicking ballpoint pen.

20        And 10 of those notebooks should be delivered to

21   chambers not later than 3:00 p.m. on March the 28th.

22        And, again, both sides are jointly directed to

23   work together in preparation and delivery of those juror

24   notebooks.

25        As in any patent infringement case, there will

1  surely be disputed issues that will be taken up by expert

2  witnesses, and I expect there will be competing and dueling

3  experts in this case, as is typical.

4       I remind you that your expert witnesses are

5  confined to the four corners of their expert reports, and

6  their testimony is limited to the matters set forth in

7  their expert reports.

8       Objections that arise during a trial like this

9  that an expert witness is testifying or attempting to

10  testify outside the bounds of their written report are

11  highly disruptive.  They occasionally are necessary, and

12  while I don't discourage you from making that objection if

13  you feel it's meritorious, I will let you know that I have

14  had cases where those type of objections were made not for

15  purposes of any inherent merit to the objection but in my

16  view were done strategically because they are so disruptive

17  and require the Court to send the jury out while it takes

18  up the issue with counsel in conjunction with reviewing the

19  particular report that may be at issue.

20       If at any point I believe that kind of objection

21  is made for strategic or non-meritorious purposes, you

22  should be aware I will probably sanction the offending

23  party.

24       So to the extent you need to make those objections

25  and there's a non-frivolous basis for doing it, feel free

1  to do so when you believe the interest of your client

2  dictate that.  But be careful that you have a meritorious

3  basis for it, lest the Court be persuaded that the

4  opportunity to break the other side's rhythm and narrative

5  is offered for strategic and non-meritorious purposes.

6          All right.  Do either Plaintiff or Defendants have

7  any questions about these instructions that I've gone over

8  with you?

9          MR. DAVIS:  No, Your Honor.

10         MS. SMITH:  No, Your Honor.

11         THE COURT:  All right.  Well, that being the case,

12 let's start with the dispositive motions that are at issue.

13         I've looked at the email from the parties with

14 regard to their proposed order.  I think it's generally

15 appropriate.  We may make a few changes as we go through.

16         I'd like to start with the motion for summary

17 judgment by Samsung regarding non-infringement.  That's

18 Document 102.

19         And I'll hear initial arguments from the moving

20 Defendants from the podium.

21         And, counsel, given the number of lawyers we have

22 in the courtroom today, I have no problem with switching

23 out counsel from motion to motion and argument to argument.

24 Let's just simply begin each appearance at the podium with

25 an introduction of who you are for the record so that it's

1  straight in the record as to who argues what.

2          MR. KASSENOFF:  Yes, Your Honor.  My name is Allan

3  Kassenoff from Greenberg Traurig, and I represent Samsung

4  in this case.

5          And I'll be addressing our motion for summary

6  judgment of non-infringement.

7          THE COURT:  All right.  Let me hear your

8  arguments.

9          MR. KASSENOFF:  Judge, there are five distinct

10  issues in connection with our motion.  I'm going to touch

11  on all of them briefly today.

12          The first one is that the accused devices, which

13  are smartphones and watches, do not calculate the incline

14  as required by Claim 17, which is the only asserted

15  independent claim, which is a method claim.

16          The second point is Samsung does not induce

17  infringement by its customers.

18          The third point, the accused phones and watches,

19  which are devices obviously, cannot infringe method claims,

20  which, again, this case only deals with method claims.

21          Fourth point, Samsung's manufacture, offer to

22  sell, sale, and/or importation of these devices cannot as a

23  matter of law constitute infringement of method claims.

24          And, finally, Judge, there's no evidence that

25  Samsung itself uses or tests this accused functionality

1  which relates to calculating an incline in the United

2  States.

3         My first point, Judge, the accused devices, these

4  phones and watches, cannot be used by the customers or by

5  Samsung to infringe because they use barometer data to

6  calculate an incline.

7         Judge, the patent explains two distinct ways of

8  calculating an incline, accelerometer data and altimeter

9  barometer data, which the patent also refers to generically

10 as pressure sensor data.

11        The patent is very clear about these two distinct

12 mechanisms to use to calculate the incline.

13        Here, this is from the specification, Judge, at

14 Column 3, and it explains the accelerometer data is used by

15 incline logic to determine an incline associated with a

16 step.

17        Then it explains that a step has three parts,

18 vertical travel up, horizontal, and vertical travel down.

19 And it explains it uses this accelerometer data as follows:

20 By determining the difference between the vertical travel

21 up and the vertical travel down.  And that, Judge, is the

22 incline.

23        The patent also explains a second mechanism to

24 calculate the incline, which, again, is a fundamentally

25 different calculation.  And that's by using an altimeter, a

1  barometer, or a pressure sensor.  And it explains at Column

2  3, a little further down, the altimeter's output indicates

3  the change in altitude.

4         And, again, Judge, that's what an altimeter does,

5  measures altitude, and you can use that to determine a

6  change in altitude.

7         And this information is used in one embodiment by

8  the incline logic to determine the incline.  That's the

9  second way, using the barometer data, by measuring or

10  indicating the change in altitude.

11        That's consistent, Judge -- or I should say, the

12  change are consistent with that.  You have independent

13  Claim 17 through the third step, which is calculating the

14  incline, and this is the first mechanism, by identifying

15  the vertical travel up portion of the step, identifying the

16  vertical travel down portion of the step, and then

17  computing a difference between the vertical travel up and

18  the vertical travel down.  That's the accelerometer

19  mechanism.

20        The second mechanism is in Claim 18, and there you

21  see the method of Claim 17 further comprising the detecting

22  a change in altitude using an altimeter and then using that

23  change in altitude to verify the incline.

24        So, again, Judge, the specification explains, you

25  can use accelerometer data to identify a vertical travel

1  up, identify a vertical travel down, and compute a

2  difference.  That's one way to calculate the incline.

3  That's the Claim 17 way.

4        The specification also explains you can use an

5  altimeter or a barometer to determine a change in altitude,

6  second way to calculate an incline.

7        It's confirmed that these are two different ways,

8  Judge, by comparing Independent Claim 17 and Claim 18 where

9  the altimeter mechanism is used to verify the incline.

10        So Claim 17, you calculate it in the first way.

11  To make sure you got it right, you do it a second way, the

12  barometer or altimeter way to verify.

13        This -- this understanding of the patent is

14  confirmed, Judge, by the prosecution history.  This is

15  original Claim 17 and 18 that the inventors submitted to

16  the Patent Office, and you can see in original Claim 17,

17  the third limitation, the incline, very broad, calculating

18  an incline and associating the incline data with the step

19  data.  It doesn't have any restrictions on how you

20  calculate the incline.

21        You can use accelerometer data.  You can use

22  barometer data.  You could use anything.  Those are the

23  only two disclosed in the specification.  But according to

24  Claim 17, as originally submitted to the Patent Office, no

25  restrictions.

1        But then Claim 18 says -- the dependent claim --

2    wherein the incline is calculated using data from an

3    altimeter.

4        So it's saying, 17 is broad, either accelerometer

5    or barometer/altimeter.  18 narrows it and says it must be

6    the altimeter.

7        THE COURT:  Sounds like you're arguing claim

8    construction to me.

9        MR. KASSENOFF:  Judge, what I'm really trying to

10   argue is not claim construction.  It's -- I'm leading up to

11   explain why we don't do the incline calculation of Claim

12   17.  It's -- it's not -- I would respectfully, Judge,

13   submit it's not claim construction.  It's non-infringement.

14       And you may remember from the Markman hearing, I

15   had raised this as a potential issue, that they were going

16   to make this argument, and here we are.

17       And I believe, Judge, in your order -- in your

18   Markman order, you had said the claim, when read as a

19   whole, it's already in there, the accelerometer.  And

20   that's all we're doing.  We're showing how the

21   accelerometer is in there.

22       Just to continue, Judge, the original claims were

23   rejected by the Patent Office based upon prior art, and the

24   patentee, the applicants, had to amend it.  And you can see

25   Claim 17, which was amended, and it was added, the exact

1   mechanism that's in the claim now, where the incline is

2   calculated by identifying vertical up, vertical down, and

3   computing a difference.

4          Now, the problem with that was Claim 18 can no

5   longer be simply wherein the incline is calculated using

6   data from an altimeter because the way Claim 17 read after

7   amended, it just wouldn't make sense because it wouldn't --

8   it wouldn't fit in because you can't use an altimeter to do

9   the vertical travel up and vertical travel down.

10          So that had to be amended, as well.  And you can

11   see right there, Judge, it was amended from simply using

12   data from an altimeter to being an entirely new

13   calculation.  And it's the verification step, a second

14   calculation.

15          This is from the Plaintiffs' complaint.  They

16   recognize this, Judge, so Paragraph 8 of the complaint,

17   they're describing the '556 patent.  And what it describes,

18   calculation of an incline by utilizing motion detected by

19   accelerometer.  And they explain exactly what the patent

20   explains, where the calculation is performed for a step

21   based on identifying vertical travel up, vertical travel

22   down, and computing a difference.

23          And correctly in their complaint, they recognize

24   the second way.  The invention also uses an altimeter to

25   determine a change in altitude where the incline logic

1   utilizes that change in altitude to make an additional

2   calculation of the incline.

3          It's very consistent, Judge, which leads me to

4   non-infringement.

5          What does -- what do Samsung's products do?  They

6   utilize a barometer.  That's both from the expert report of

7   Dr. Medvidovic, which he -- he carefully considered the

8   source code, spoke to Samsung engineers.

9          It's also from the expert report of Dr. Easttom,

10  Plaintiffs' witness.  He recognized it uses the baro --

11  barometric sensor.  Vertical is determined based upon

12  changes in pressure.  That's not in dispute.

13         Now we get to why doesn't Samsung infringe?

14  Number one, we use the -- we use the Claim 18 method,

15  detecting a change in altitude via barometric pressure.

16         Now, if we look at Claim 17, it should be a bit of

17  a review.  It's calculating an incline, and it's the

18  three-step process, identifying vertical travel up,

19  identifying vertical travel down, computing a difference.

20         Now, here's how you -- you construed the vertical

21  travel up portion and the vertical travel down portion in

22  your Markman opinion, Judge.  What you said was the step is

23  the same step.  And it's a single step.  In other words,

24  what you need to do is you look at the vertical travel up

25  portion of a step, and then you look at the vertical travel

1   down portion of the same step.  Straight from your Markman

2   order, Judge.

3         You may remember this picture from our briefing.

4   This is what the patent says.  A step includes three parts,

5   a vertical travel up, which is when you lift your foot,

6   horizontal where -- when you're walking your step -- your

7   foot moves forward, and vertical travel down, which is the

8   blue arrow, which is your foot going down of the same step.

9   That's what the patent teaches, using accelerometer data.

10  That's what Claim 17 covers.

11        That's not what Samsung does.  They use a

12  barometer



13                        So we -- we mocked up this

14  picture to try to explain the best way we could.





REDACTED BY ORDER OF THE COURT



```
1   ████████  ████████████████████████████  ████████████

2   ██████████████████████  ████████████████████  ████████

3   ████████████████████████████████████████████████████████

4   ████████████████████        Very different system.

5          You take another step.  Now the person is at this

6   point, Judge.  And what does it do?  ████████████████████

7   ████████████████████████████████  ████████████████████

8   ████████████████████████████████████████████

9   ████████████████████  ██████████████████████████████████

10  ████████  ██████████████████████████████████████████████

11  ████████████████

12          ████████████████████████████████████████████

13  ████████████████████████  ████████████████████████████

14  ████████████████████████████████

15          What's Uniloc's argument in response?  ████████████

16  ████████████████████████████████████████████████████████

17  ████████████████████████████████  ████████████████████████

18  ████████████████████████████████████████████████

19  ████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ████████████████████████████████

22          But, Judge, let me explain why it's not.  ████████

23  ████████████████████████████████████████████████

24  ████████████████████████████  ████████████████████████

25  ████████████████████████  ██████████████████████████████
```

REDACTED BY ORDER OF THE COURT



1
2
3
4
5
6
7
8
9
10
11  They do not

12  calculate an incline based upon vertical travel up portion

13  of a step, vertical travel down portion of the same step,

14  and the difference therebetween.

15       The second argument they make is -- this is

16  straight from their -- their opposition to our motion.

17  Dr. Easttom found that the vertical travel up portion and

18  vertical travel down portion of a step are identified.

19  Dr. Easttom found that the accused Samsung products compute

20  the difference between those portions.  Well, all that he's

21  doing in that -- all that Uniloc is doing is saying what

22  the claim requires.

23       The problem, Judge, is they rely upon

24  Dr. Easttom's infringement report which is conclusory.  And

25  it's well-settled, you can't -- you can't create a genuine

1   issue of material fact just by having a conclusory expert

2   opinion.

3       And, Judge, I just chose one -- one section, one

4   paragraph from Dr. Easttom's infringement report that

5   addresses this limitation to show you how it's conclusory.

6       So here's what he said in Paragraph 110.  And,

7   Judge, I -- I would submit that -- or not submit, but

8   Dr. Easttom's report, which was attached as Exhibit 9 to

9   Docket Entry 112, his entire discussion of limitation

10  17(c), which is the one we're talking about, the incline

11  calculation, takes place on Pages 43 through 53.

12      And, Judge, I have a copy of it here.  If you

13  would like, I could go through paragraph by paragraph

14  showing how it's conclusory.  I don't think that's the most

15  efficient use of our time today, but I would invite

16  yourself and the clerks to do that exercise.

17      But what I did is I pulled Paragraph 110 just as a

18  representative example of the type of conclusory analysis

19  he performed.  And as an example, he identifies a function,

REDACTED BY ORDER OF THE COURT

20  and he says:  █████████████████████████████████

21  ████████████████████████████████████████

22  ████████████████████████.  This demonstrates -- and then

23  he just quotes the claim language.  There's no actual

24  analysis, Judge.  And I would submit the entire section,

25  Pages 43 through 53, are similarly conclusory.

1          Dr. Medvidovic, Samsung's expert, did a very

2    thorough review and included his analysis in his report.

3    And the crux of his analysis is in Paragraphs 58 and 59.

4    And I put some of that up on this slide here just to show

5    you the difference in the analysis he did.

6          So according to Dr. Medvidovic, the source code

REDACTED BY ORDER OF THE COURT

7    indicates ████████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ███████  ████████████████████████████████████████████████

10   ██████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████

12   ███████████████████████████

13          But don't take his word for it, Judge.  He

14   identifies the exact line number and page number of the

15   source code, ████████████████████████████████████████

16          ██████████████████████████████████████████████

17   ████████████████████████████████████████████████████████

18   ███████████████████████████████████████████████████

19   ████████████████████████████████  ██████████████████████

20   ███████████████████████████████████████████████████

21   ██████████████████████████████████████████████████

22   ███████  ██████████████████████████████████████████████████

23   ████████████████████████████████████████████████

24   ████████        And, again, Judge, he gives you the exact portion

25   of the source code where this is done.

REDACTED BY ORDER OF THE COURT



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16          And then this is the source code.  This appears

17    right below the paragraph.  This is all in Paragraph 59 of

18    Dr. Medvidovic's report.  And I'm not a source code expert,

19    but I've met with Dr. Medvidovic enough times to -- for him

20    to explain it to me.

21

22

23

24

25

1 ██████████████████████████████████

2          THE COURT:  I don't want to cut you off,

3 Mr. Kassenoff, but this is the first of five points on one

4 motion.  We've got a lot to cover today.

5          MR. KASSENOFF:  Yes, Judge.  And to be frank, this

6 is the most important point, because if you agree with us

7 that the devices don't do this, we all go home.  So I did

8 want to spend a little bit of time getting into that.  The

9 rest of my points on this motion are very quick.

10          We'll go to Point 2.  Samsung does not induce

11 infringement.  Judge -- well, you know the law as well

12 as -- probably better than anyone else in this courtroom.

13 What is required for inducement?  Direct infringement, that

14 Samsung, the Defendant, knowingly induced the infringement,

15 and Samsung possesses specific intent to encourage the

16 infringement.

17          There's no direct infringement because it's done

18 in a different way, as I just explained.  There's no

19 pre-suit knowledge in this case of the patent.  Uniloc

20 agrees with that.

21          So at the very least, there can be no induced

22 infringement before the complaint was filed.

23          And then most importantly, there's no evidence of

24 any specific intent to encourage infringement.  And, Judge,

25 the Commil case, which was decided by the Fed Circuit and

1  affirmed on this point by the Supreme Court, says a

2  good-faith belief of non-infringement, which at the very

3  least I think we've demonstrated, tends to show that there

4  is no specific intent to encourage direct infringement.

5        The next two points are just simply a matter of

6  law, Judge.  Devices cannot infringe method claims.  I'm

7  not even sure why we have to argue this.  That's

8  well-settled.

9        But Dr. Easttom's report alleged they could.  And

10 at his deposition, we asked him:  Just so I'm clear, in

11 your opinion, do the devices themselves directly infringe

12 the patent?  That's one infringement scenario, correct?

13       His answer is:  Yes.

14       We should get summary judgment so that doesn't

15 even come in, and that's not presented to the jury.

16       That's well-settled law.  For example, from the

17 Finjan case, a person must practice all steps to infringe a

18 method.

19       Next one.  Another black letter piece of law.

20 Manufacturing, offering to sell, sale, and/or importation

21 of a device cannot constitute infringement of a method

22 claim.  This was taken directly from Dr. Easttom's report.

23 He says the opposite.

24       The law is clear, again, Judge.  We chose one

25 Fed Circuit case.  Method claims are only infringed when

 1   the process is performed, not by the sale.  And then right

 2   around the time we were preparing our summary judgment

 3   papers, the District Court of Delaware decided this exact

 4   issue where a Plaintiff was alleging making, selling,

 5   offering to sell, and -- and importing devices could

 6   infringe a method claim.  And I think it was Judge Stark, I

 7   believe, said:  No, as a matter of law, that's not true.

 8           My last point, Judge, since we -- we are short on

 9   time, is that there's no evidence that Samsung uses or

10   tests this functionality in the United States.

11           And with that, Judge, unless you have any

12   questions, we'll rest on our papers.

13           THE COURT:  All right.  Let me hear a response

14   from Plaintiff.

15           MR. TOLLEFSON:  Thank you, Your Honor.

16           I'm Brian Tollefson.  I represent Plaintiffs,

17   Uniloc.

18           I have some hard copies of the presentation.  Can

19   I --

20           THE COURT:  If you'd like to hand them up, that's

21   fine.

22           MS. SMITH:  Your Honor, have you been having

23   issues with this monitor?  It's not working.

24           THE COURT:  I'm not aware of any, Ms. Smith.

25           MS. SMITH:  Okay.  I've pushed every button.  I

 1   was just curious.  Should I continue poking at it or --

 2           THE COURT:  Are both -- are both of the monitors

 3   not functioning?

 4           MS. SMITH:  We have one, Your Honor, which is --

 5   which is sufficient.  I just wanted to make sure I didn't

 6   need to keep poking if you knew it was not operating.

 7           THE COURT:  Ms. Lockhart, why don't you look at

 8   their monitor while Plaintiffs' counsel is setting up for

 9   his argument?

10           MS. SMITH:  Your Honor, we have -- we have one

11   monitor.  I just saw an opportunity at break to --

12           THE COURT:  Yeah, we'll get the IT people to check

13   it at a recess.

14           If you can make do with the one monitor instead of

15   two, let's just go forward.

16           MS. SMITH:  It's up, Your Honor.  Thank you.

17           THE COURT:  Okay.  All right.  Mr. Tollefson, let

18   me hear your response.

19           MR. TOLLEFSON:  Can we have the podium?

20           Thank you, Your Honor.

21           First, I'll address the issue with respect to

22   whether or not the barometers are required by the claim.

23   And then I'll get into what the products actually -- what

24   the products actually do and how they actually work, which

25   will prove infringement.

1          So Your Honor, I think, recognized that Samsung is

2     at least in part rearguing claim construction because we

3     heard here on October 16th all the same arguments.  And we

4     saw in the briefing basically all the same arguments,

5     references to what the inventor said, prosecution history,

6     and the like.

7          I'm just going to illustrate here the claim and

8     then the constructions.  What we see here, Claim 17, is the

9     principal and the only independent claim -- the principal

10    claim that we're talking about.

11         And what you see is that the accelerometer is

12    required for indicating motion in three directions and that

13    the accelerometer data must be used in calculating user

14    step data.  But then what we see down in the calculating of

15    an incline of the wherein clause, there's nothing really

16    linking that back to the accelerometer data, unlike in

17    Claim 1, which is no longer in the case.

18         Claim 1 was the only -- is the only claim that

19    actually links back the accelerometer data to the

20    incline -- incline logic itself.  So you see here in red

21    that Claim 1 requires that the incline logic utilize the

22    motion detected by the accelerometer to calculate the

23    incline, and that's just simply not present in Claim 17.

24         And Your Honor's constructions are just perfectly

25    clear.  There's -- there was no requirement that the

 1    calculation of the incline require the accelerometer data.

 2         Now, we have another motion -- another Daubert

 3    motion today directed to Samsung's expert applying this

 4    incorrect construction.  So there's some briefing in that

 5    motion that sort of overlaps on to this issue.

 6         And what Dr. Medvidovic said in his deposition is

 7    that the calculation incline must be based solely on

 8    accelerometer data, right?  And I think that it's

 9    important, Your Honor, that we -- that the claim

10    construction of 17 simply -- even if it uses the

11    accelerometer data, even if Your Honor meant in your

12    reasoning that the accelerometer data must be used in

13    calculating the incline, there's really no basis for saying

14    that it must be solely the accelerometer data.

15         And I'd like to point out that Claim 18 has

16    multiple different requirements in it that would defeat any

17    sort of claim differentiation argument that Samsung is

18    making.  And namely, you've got the incline of the surface

19    and the idea that it's verification.  So those extra

20    features, I would submit, would not require you to read

21    Claim 17 to exclude using a barometer.

22         Now, let me talk about how the Samsung products

23    work.

24         Okay.  So Samsung's key witness, Dr. Shin, who is

25    the 30(b)(6) witness on the operation of the products,

1   explained in completely unequivocal terms how the products

2   work.

3          Each of the products includes something called a

4   pedometer, and that's a pedometer sensor that sits inside

5   the device itself, whether it's a wearable or it's a

6   smartphone.  That -- that pedometer is on a sensor hub, and

7   that pedometer is always running.  And inside that

8   pedometer are algorithms.  And every device that has a

9   pedometer uses the same algorithms for calculating speed,

10  calories, incline, and steps.  And they all use the

11  accelerometer.

12         And the accelerometer is used for all the main

13  functions of a pedometer -- that is, calculating steps,

14  speed, distance, and calories.  So we know -- we know the

15  accelerometer is used.

16         Now, there's a question about whether or not the

17  accelerometer is solely used.

18         Our position is that the accelerometer data is

19  used for calculating incline, and the barometer is also

20  used.  And Dr. Shin explains this in his testimony.

21         So what happens is that the accelerometer data --

22  accelerometer data is received by the pedometer, and then

REDACTED BY ORDER OF THE COURT

23  it's processed.  ████████████████████████████████████████

24  ██████████

25         THE COURT:  It looks like a picture of snow.

```
1            MR. TOLLEFSON:  Oh, you can't see it?
2            THE COURT:  I see a couple of trees and some
3  snow --
4            MR. TOLLEFSON:  Oh, I'm sorry.
5            THE COURT:  -- and some clouds.
6            MR. TOLLEFSON:  It's not -- it's not coming up for
7  some reason.
8            Okay.  I'll just explain.
9            I don't know how to make it come up on the screen.
10            THE COURT:  Now you've got Claim 17 up.
11            MR. TOLLEFSON:  Right.  Okay.  This -- this is in
12  the briefing, and it's in Dr. Easttom's -- Dr. Easttom's
13  report.  There's -- the accelerometer data comes in, and
14  what happens is the accelerometer data is processed and
15  turned into synthesized accelerometer data which represents
16  the motion of the user.
17            And when a person is walking, this motion is
18  predominantly acceleration in the up and down directions.
```

REDACTED BY ORDER OF THE COURT

```
19  ███████████████████████████████████
20  █████████████████████████████████████████
21  ████████████████████████████████████
22  ███   █████████████████████████████████████
23  ████████████████████████████████████████
24  ████████████████████████████████████████
25  ████████████████████████████████   ████
```

REDACTED BY ORDER OF THE COURT



13    And you may recall at the claim construction

14 hearing when we discussed the vertical up and vertical

15 down, I put up this slide utilizing Samsung.

16         Now, we -- we don't really agree with this slide

17 because it's not how people walk, but what's -- what we

18 illustrated here is we're talking about computing the

19 difference.  And Your Honor construed that to give its

20 plain and ordinary meaning.  We talked about whether it

21 really required at the time Samsung was arguing that you

22 had to measure the red arrow, measure the blue arrow, and

23 do subtraction, and Your Honor didn't include that in the

24 claim construction.

25         So you can compute the difference by computing the

REDACTED BY ORDER OF THE COURT



1   orange arrow or the black arrow.

5   Apologize.

REDACTED BY ORDER OF THE COURT



4          And I'd just like to show you a timeline here so
5    we understand what's going on.
6          Sorry, Your Honor.
7          So Dr. Shin was deposed on October 3rd or October
8    1st or 2nd.  I can't remember the exact date.  But the
9    point being it was before claim construction.
10          And after claim construction came down, he
11    filed -- he served an errata sheet.  So on October 1st, we
12    deposed Dr. Shin, and he basically admitted infringement.
13          And then on October 16th, we had the Markman
14    hearing.  And then Your Honor issued your ruling on October
15    25th.
16          And then on November 5th, Dr. Shin submitted an
17    errata sheet, but he didn't change his testimony -- the
18    substance of his testimony.
19          And then we served our expert report relying on
20    Dr. Shin's testimony.  And then on December 3rd, for the
21    first time, is when Dr. Medvidovic
22
23          And Dr. Medvidovic basically disagrees with
24    Dr. Shin.  So that's just a disputed fact.  This is all
25    just genuine issues of material fact.  The way that these

1    systems work is they automatically, no matter whoever turns

2    these things on, is infringing because they automatically

3    perform every step of Claim 17.  And this is laid out,

4    I think, pretty clearly in the briefing.

5        So Samsung -- so the evidence shows that every

6    Samsung device with a pedometer utilizes a combination of

7    accelerometer data and -- and barometer information to

8    perform every step of Claim 17.

9        And Samsung was showing a slide of a human walking

10   up a hill, and they were saying that a step is

11   determined -- the incline is determined every time a step

REDACTED BY ORDER OF THE COURT

12   is taken, ███████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ██████████████████████████████████████████████

15       And that's a dispute between Samsung's expert and

16   Samsung's 30(b)(6) witness.  And it's also a dispute

17   between Samsung's expert and Uniloc's expert witness who

18   testifies that it's -- ██████████████████████████████

19   ███████████████████████

20       So Dr. Medvidovic's expert report has a few

21   paragraphs of high-level analysis where ████████████████

22   ████████████████████████████████████████████████████

23   ██████████████████████████████████████████████████████

24   ███████████████████████████████████████████████████████

25   ███████████████████████████████████

1          So that's just a dispute between the experts.

2          Now, with respect to inducement, Dr. Easttom,

3   Uniloc's expert's, testimony is that any user -- any user

4   of the device infringes.

5          And so there's two points that Samsung really

6   makes on this issue.  And that is whether or not there's

7   direct infringement at all.  And they claim that there's

REDACTED BY ORDER OF THE COURT

8   not. ████████████████████████████████████████████████

9   ████████████████████████

10  ████████████████████████████████████████████████

11  Mr. Erogbogbo's deposition testimony.  He was Samsung's

12  30(b)(6) witness on a number of topics, including use.

13  ████████████████████████████████████████████████

14  ████████████████  ████████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████████████████████████████████████

18  ████████████  ██████████████████████████████

19  ████████████████████████████████████████████

20  ████████████████████████████████████  So that's

21  infringement.

22  ████████████████████████████████████████████████

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25  ████████████████████████████████████████████

REDACTED BY ORDER OF THE COURT



6         So when you run the Samsung Health app, what is

7  happening is you are then able to view all these different

8  metrics.  You can -- you can now see your steps, you can

9  see your calories, you can see all that stuff.

10        So if you're testing the Samsung Health app, that

11  is another act of infringement.  And because Dr. Easttom

12  says all this stuff works automatically, just -- just the

13  act of testing it itself is good evidence of infringement.

14        THE COURT:  Does Dr. Easttom supply any specific

15  information to support this conclusory statement that they

16  automatically work automatically every time you turn the

17  phone on, or is it just I know it because I'm experienced,

18  and I know how this testing works?

19        MR. TOLLEFSON:  So what Dr. Easttom did is he

20  analyzed the source code.  He used a forensic tool.  And

21  Dr. Medvidovic didn't use any forensic tools.  He used a

22  forensic tool that's used by the FBI, NSA, and NASA, and so

23  forth.  And he ran all these traces.  And then he looked at

24  the code, and then he looked at Dr. Shin's testimony.

REDACTED BY ORDER OF THE COURT

1  ████████████████████

2          ██████████████████████████████

3  ███████████████████████           So his testimony is

4  consistent with Dr. Easttom's testimony.

5          So Dr. Easttom's testimony was based on his review

6  of the code.  He believes that it's always on based on his

7  review of the code.

8          And also his review of Dr. Shin's testimony where

9  Dr. Shin talks about how the pedometer sensor hub works.

10  And Dr. Shin gets into -- gets into the weeds on it.  He

11  says ████████████████████████   ████████

12  ████████████████████████████████████████

13  ████████████████

14          THE COURT:  There seems to me in the briefing to

15  be some distinction between what Dr. Easttom says in his

16  report and what he says in his deposition testimony.

17          Now, he says in his deposition testimony:  ████

18  ████████████████████████████████████████

19  ████████████████████████████████████

20  ████████████████████           But that's no deposition.

21  That's not in his report.  And he's not going to testify at

22  trial outside of his report.

23          MR. TOLLEFSON:  I understand that.

24          THE COURT:  So how do you get around the issue

25  that some of this confirmation that you're talking about

1  exists outside of his written report that he's going to be

2  permitted to opine and testify directly on at trial?

3          MR. TOLLEFSON:  Dr. Easttom provides dozens of

4  paragraphs with an explanation about how the products

5  perform each and every step of the claim automatically.

6  And that's based on his review of the code and his review

7  of the other -- other evidence in the record.

8          THE COURT:  All right.

9          MR. TOLLEFSON:  But Dr. Medvidovic's testimony is

10  basically limited to saying that the Samsung Health app

11  requires a user to accept the terms and conditions.  But

12  the Samsung Health app is different.  It's -- you don't

13  need the Samsung Health app to infringe.  The Samsung

14  Health app is another layer.

15          THE COURT:  Let me hear the rest of your argument.

16          MR. TOLLEFSON:  Yeah.  So with respect to

17  inducement, there is direct infringement.  There's evidence

18  of direct infringement.

19          And Sam -- Samsung sells its phones and provides

20  paperwork with those phones on how to use them -- use the

21  phones.  It provides on their websites instructions for how

22  to use their phones.  It provides instructions for how to

23  use the S Health app.  There's millions of users of the

24  Samsung Health -- S Health app.  So you know that there's

25  millions of people in the United States that are not only

1  carrying around Samsung phones, which would be

2  infringement, but also they're using the specific

3  functionality on a daily basis, registered with Samsung,

4  uploading and storing the data server, whatnot.

5        So there's -- there's evidence in the record that

6  Samsung encourages its customers to use the phones in an

7  infringing manner.

8        Moreover, there's evidence in the record that

9  Samsung tests and -- and trains its sales reps.  So

10 Mr. Erogbogbo talked about training, and that they train

11 their sales reps.  And there's documentation -- Samsung

12 documents that talk about training their sales reps in the

13 S Health area.  So all the acts are evidence that could be

14 used to prove -- to prove induced infringement.

15       Moreover, in our papers, we cited to some case law

16 that supports the fact that Samsung designs -- these

17 products could also be evidence of inducement.  They --

REDACTED BY ORDER OF THE COURT

18 their 30(b)(6) witness testified that

19

20

21       THE COURT:  Pull the microphone a little closer or

22 speak up --

23       MR. TOLLEFSON:  Sorry, Your Honor.

24       THE COURT:  -- please, sir.

25       MR. TOLLEFSON:  Also, Samsung is arguing that they

1  have a good-faith basis that they don't infringe, however,

2  they haven't provided in their briefing exactly when they

3  determine this good-faith basis -- you know, what their

4  arguments are.

5          So based on the record, it appears that their

REDACTED BY ORDER OF THE COURT

6  good-faith basis starts with ███████████████████████

7  ████████████████████████████████

8          So if -- if Your Honor even were to rule that they

9  had a good-faith basis, I think that the time period would

10  be from December 3rd, 2018, onward, not from the time that

11  the infringement action was brought.

12          Now, as -- as far as the other points that Samsung

13  made with respect to infringing a method by sales, their

14  briefing is confusing.  I'm not really sure what they're

15  trying to accomplish with that portion of their motion.

16          Uniloc has pled and intends to try indirect

17  infringement by contributory infringement, which would be

18  directed to sales.  That's indirect infringement, not under

19  271(a).

20          Now, under 271(a), there could be other

21  theories -- legal theories of infringement that Samsung

22  infringes such as under the SiRF Tech. case through

23  vicarious liability and divided infringement.

24          So under those theories of infringement, the

25  devices themselves -- the devices themselves perform these

1    steps automatically.

2          So under SiRF Tech., you've got a situation where
3    even though a user is holding a device, the liability is
4    attached to the -- to the company that -- that created the
5    device because of the automatic steps that are performed.

6          So I just -- I don't know -- I don't know exactly
7    what they're trying -- what they're trying to accomplish
8    with that.  I think that those -- those points would be
9    better served with jury instructions at trial versus some
10   sort of tiny partial summary judgment on -- on sales or
11   something like that.  The sales will come in from divided
12   infringement and from contributory infringement.

13         THE COURT:  Well, it's clear that -- it's clear
14   that the Plaintiff is pursuing indirect infringement claims
15   that focus on and emanate from the consuming public's
16   purchasing -- the purchasing public's use of these devices.

17         Focus if -- focus for a moment, if you will, in
18   your argument about Plaintiffs' position on direct
19   infringement alleged against Samsung for their own acts, as
20   opposed to the indirect infringement that you've already
21   mentioned.

22         MR. TOLLEFSON:  You're asking me, Your Honor,
23   which acts cause direct infringement?

24         THE COURT:  I'm asking for you -- I'm asking you
25   to crystallize for me in a sentence or two why you think

1    there is a viable theory for Plaintiff to pursue as to

2    direct infringement alleged against Samsung for its own

3    acts.

4          MR. TOLLEFSON:  I understand.

5          Direct infringement is committed by Samsung's use

6    of their own devices, the use of their devices in multiple

7    ways.  Testing, training, and then they also use their

8    devices under a theory of divided infringement because the

9    devices themselves perform each and every step

10   automatically.  So that would be under the SiRF Tech. case.

11         THE COURT:  And is this designing and testing that

12   happens inside the United States, as opposed to designing

13   and testing that happens outside the United States?

14         MR. TOLLEFSON:  Well, certainly there's designing

15   and testing that occurs in both the United States and

16   Korea.  There are three different kinds of tests that are

17   performed in the United States.  And two of those tests are

18   directed to the fitness tracker, which is what we're

19   talking about here in this case.  So, yes, in the United

20   States.

21         THE COURT:  Well, what prompts my question is an

22   argument in Defendants' briefing where they say that

23   Plaintiff has no evidence that any Samsung employee has

24   actually performed all the claimed method steps in the

25   United State -- United States as a part of their job

1  function.

2       MR. TOLLEFSON:  Okay.

3       THE COURT:  That's what I'd like you to focus on.

4       MR. TOLLEFSON:  Okay.

5       THE COURT:  Because apparently, your counter to

6  that is Dr. Easttom says his experience is extensive and

7  common sense and knowledge of corporations tells you that

8  that happens.

9       But there doesn't seem to be any particular this

10 is why it happens, this is how a Samsung employee performs

11 each step of a method in the United States.

12      MR. TOLLEFSON:  All right.  Well -- so Dr. Easttom

13 submitted an affidavit, which was filed with the Court with

14 our sur-reply where he clarified and commented on Dr. --

15 Mr. Erogbogbo's testimony on testing.

16      THE COURT:  And I know that the Shin errata and

17 the Easttom affidavit -- I mean, these have just been

18 filed, and there hasn't been -- there hasn't been an

19 opportunity to respond to them.  So I don't know how it's

20 properly briefed and before me for argument today.

21      MR. TOLLEFSON:  Okay.

22      THE COURT:  I mean, you can certainly reference

23 it, but I don't think either side can expect me to dispose

24 of that today without the responding party having an

25 opportunity to file a response.

```
 1            MR. TOLLEFSON:  I understand, Your Honor.

 2            Mr. Erogbogbo was Samsung's 30(b)(6) witness on

 3   use.

 4            THE COURT:  And they asked him if he had used

 5   this?

 6            MR. TOLLEFSON:  Yeah.  Well, he used it.

 7            And Mr. Diaz, another 30(b)(6) witness, disclosed

 8   that he used it.  I mean, there's probably people in this

 9   room that are using it right now.

10            However, he testified and named an actual

11   individual who heads up the user testing in the United

12   States.  So he testified -- he named a person who works for

13   Samsung whose responsibility it is to test the pedometer

14   functionality in the United States.  REDACTED BY ORDER OF THE COURT

15            So Samsung admits at least that ████████████████

16   ██████████████████████████████████████████████████████████

17   ████████████████████████    ██████████████████████

18            THE COURT:  And does Dr. Easttom address this in

19   his expert report, or is this, again, a deposition or an

20   affidavit or some source of information outside his expert

21   report which there's been no motion for me to grant leave

22   to amend.  And without that, there's not going to be any

23   testimony in this trial before this jury that comes from

24   outside of that expert's report.

25            MR. TOLLEFSON:  Well, there will be the testimony
```

1  of -- this is a party admission, so this will come in under

2  Rule 32, and we'll read that in open court.

3       Your answer is that -- my answer to your question,

4  however, Your Honor, is that Dr. Easttom did not directly

5  address Mr. Erogbogbo's testimony in his expert report.  He

6  addressed it in the affidavit.

7       THE COURT:  That's the way it appears to me.

8       MR. TOLLEFSON:  Yes, sir.

9       THE COURT:  All right.  What else do you have for

10 me on this motion, counsel?

11      MR. TOLLEFSON:  Just one minor point.

12      Samsung claims that if a device doesn't have a

13 barometer, it should be out.  But Dr. Shin's testimony

14 is -- goes directly to the heart of this issue, and he lays

15 out -- and this is in our briefing -- in clear terms that



REDACTED BY ORDER OF THE COURT

24      THE COURT:  All right.  I'll give the Defendants a

25 brief rebuttal, and then we'll see where we are.

1          MR. KASSENOFF:  Judge, to be honest, I'm not a

2    hundred percent sure where to start.  I heard a lot of

3    things today for the first time.  I heard the concept of

4    vicarious liability.  I heard the concept of divided

5    infringement.  Neither of those are in the infringement

6    contentions.  Neither of those are in the untimely amended

7    infringement contentions, which one of my colleagues will

8    address later today.  Frankly, I'm not even sure those are

9    appropriate in the case.

10          Contributory infringement, it was pled in the

11    complaint.  I admit that, or I concede that.  Again, not in

12    the infringement contentions, not in the untimely amended

13    infringement contentions.

14          We asked Dr. Easttom:  Do you have an opinion on

15    contributory infringement?

16          He said:  No.

17          We didn't even know it was still in the case until

18    the -- the Plaintiffs tried to put it into the jury

19    instructions, which is a big dispute we have, and we'll

20    hear from Mr. Edlin about contributory infringement later

21    today.

22          Your Honor, you hit -- you hit one of the key

23    points about lack of use by Samsung.  Dr. Easttom did not

24    rely on Mr. Erogbogbo's deposition testimony.

25          What Mr. Tollefson said is he didn't directly

```
 1   address it.  I mean, let's call a spade a spade.  He didn't
 2   address it at all.  They realized the problem with that, so
 3   they put in this affidavit trying to sneak it in.
 4         But it doesn't even matter.  I'm going to read to
 5   you two questions and answers from Mr. Erogbogbo's
 6   deposition testimony, which is on Page 8 of our reply
 7   brief.
 8         THE COURT:  Let me stop you a second.
 9         Now, I'm getting confused.  I don't have anything
10   before me that I'm aware of, unless I've had a lapse of
11   memory, about untimely amended infringement contentions --
12   contentions before the Court today.
13         MR. KASSENOFF:  Respectfully, Judge, we -- we
14   moved to strike their Doctrine of Equivalents arguments,
15   which were included in untimely amended infringement
16   contentions.  That was the name of the motion.
17         THE COURT:  That's where -- that's where that
18   comes in?
19         MR. KASSENOFF:  Correct, Your Honor.
20         THE COURT:  All right.
21         MR. KASSENOFF:  Going back to Page 8 of our reply
22   brief, question and answer of Mr. Erogbogbo --
23   Mr. Erogbogbo.
```

REDACTED BY ORDER OF THE COURT

REDACTED BY ORDER OF THE COURT



12      At the deposition, Uniloc's counsel asked

13  Mr. Erogbogbo if he personally ever used the pedometer

14  function.  He said he did at some point in the past.

15      They didn't ask him was that part of your job

16  functioning as a marketing executive at Samsung.  They

17  didn't ask him that question.  They didn't ask him, what

18  product did you use?  Was it one of the accused products?

19  Was it one that can't infringe because it doesn't have a

20  barometer?  Was it done before the patent was issued?

21      There was no follow-up.  The use of one person of

22  an unnamed product with an unnamed functionality that

23  doesn't even calculate the incline as required by Claim 17

24  cannot suffice.

25      Another point, Judge, was this -- this automatic

1    calculation of the incline.  And Mr. Tollefson relied on

2    the SiRF Tech. case.

3            Now, Judge, I would point out the

4    Ericsson v.  D-Link case, which was Fed Circuit 2014,

5    substantially after the SiRF case, and in that -- in the

6    Ericsson case, the patentee made a similar argument, that

7    it was done automatically, the method, then the sale of a

8    product can't infringe, along the lines of what the

9    Plaintiff is arguing here.  And what the -- Ericsson argued

10   was SiRF -- SiRF.  And what did the Fed Circuit say?  They

11   said:  No, SiRF is distinguishable because in SiRF, the

12   manufacturer of the GPS checks, they still perform several

13   of the steps because they're done on their own satellites

14   and servers.  So the fact that the customer does the last

15   step doesn't matter.  As the -- as the component

16   manufacturer, you can still directly infringe.

17           But what the Fed Circuit said in Ericsson, they

18   cited a whole long string of cases, including RICO, Akamai,

19   and Lucent, and they said:  Our other decisions echo the

20   idea from RICO that the direct infringer must actually

21   perform the steps in the method claim.

22           And that's how the Fed Circuit came out in

23   Ericsson.  And we don't do that.  The fact that customers

24   may do it, they can go after us for induced infringement.

25   That doesn't make the sale of the product a direct

1  infringement by Samsung.

2          Another point on this automatic notion, there's no

3  testimony or there's nothing in the report from Dr. Easttom

4  that says it's automatic or explains why it's automatic.

5          They said that Dr. Shin said that.  I -- I

6  defended Dr. Shin's deposition.  I've read his transcript

7  many times.  I didn't see anything about that.

8          The only evidence that I've seen is from

9  Dr. Medvidovic who said he walked around with one of the

10  accused phones without accepting the terms and conditions

11  of the Health app, and nothing was recorded.  That's the

12  evidence that I saw.

13          Going back to some of the other arguments that the

14  Plaintiff made today.

15          Mr. Tollefson argued -- he pointed out in

16  Claim 17 that the receiving data talks about accelerometer

17  and the calculating talks about the accelerometer.  But the

18  incline, there's nothing in here about accelerometer.

19          So what?  If you look at the specification, which

20  is the description of the invention by the patentee, he's

21  explaining the identification vertical up and down is done

22  with the accelerometer data.

23          Conversely, he's explaining that the altimeter

24  works on the change in altitude.  It doesn't matter that

25  the words "accelerometer" don't appear in that step.

1          Mr. Tollefson also said that this isn't a claim

2     differentiation situation.  I agree.  It's not claim

3     differentiation.  It's what the patent and what the

4     inventors taught and disclosed.

5          Mr. Tollefson mentioned Dr. Shin.  He was one of

6     the lead engineers at Samsung on this product.  And it may

7     have been a misstatement, but Mr. Tollefson said that

REDACTED BY ORDER OF THE COURT

8     ████████████████████████████████████████████████████████

9     ████████████████████████████████████████████████████████

10    ███████████████████████████████████████████

11         Dr. Shin never said anything like that.  I'm going

12    to pull up what he actually said, which was on one of the

13    Plaintiffs' slides.

14         Here's -- here's the original transcript.  And,

15    Judge, you have to understand, Dr. Shin, he's a Korean

16    engineer, Ph.D., very smart, does not speak very much

17    English.  When I spoke to him, I had -- every time I speak

18    to him, I have to communicate through a translator.  His

19    English is not good at all.

20         He was asked a somewhat confusing question:  ██

21    ██████████████████████████████████████████████████████████

22    ███████████████████████████████████████████████████████████

23    ██████████████████████████████████████████████████████████

24    ████████████████████████████████████████████████

25         ███████████████████████████████████████████████████

REDACTED BY ORDER OF THE COURT



 1

 2

 3

 4

 5

 6          But the problem, Judge, was that's a confusing

 7  question for me, and I'm a native English speaker.  For

 8  Dr. Shin, hearing that question through a translator, it

 9  was confusing, which is what he said.  It's rather long and

10  confusing.  It was reinterpreted.  And he did answer it,

11  but then upon further reflection, he put in an errata and

12  he explained it:

13

14

15

16

17

18          Now, this is one of the unfortunatecies, Judge, of

19  the Korean language.  There's no "a" or "the" in Korean, so

20  when Dr. Shin put that in an errata, he didn't understand

21  that in English

22                                                    Those

23  words don't exist in Korean.  And when that was explained

24  to him, he did put in a second errata to clarify.  It's not

25  what you would in English call

REDACTED BY ORDER OF THE COURT

1 [redacted]

2 [redacted]

3       But it doesn't even matter, Judge, for a number of

4 reasons.

5       First, everything that Samsung does, all this, is

6 still not identifying vertical up and vertical down and

7 computing a difference.  So this is all a red herring.

8       More importantly, even if we're going to say, you

9 know what, Dr. Shin, we're holding you to what you said

10 originally, we're not going to let you do any erratas,

11 despite the language barrier, despite everything, [redacted]

12 [redacted]

13       Mr. Tollefson made a -- a big point of saying the

14 Samsung devices use the accelerometer data for all these

15 things, calculating steps, speed, distance, calories.  We

16 don't dispute that.  We have an accelerometer.  We do a lot

17 with the accelerometer.  That's not what the claim

18 requires.  The claim requires a calculation of the incline.

19 And that is done with the barometer.

20       THE COURT:  Have you got anything additionally

21 that responds directly to Plaintiffs' arguments, because

22 you've lapsed back into your original arguments again now?

23       MR. KASSENOFF:  I apologize, Judge.  I was trying

24 to respond to specific points.

25       On the inducement point, Judge, where Plaintiff --

1   Plaintiff argued that the good-faith belief only started on

2   December 3rd when we served our expert report, I've never

3   seen law that says that good-faith belief starts when you

4   serve an expert report.  I assure you, when Samsung gets

5   sued with a patent -- in a patent case, they immediately

6   analyze the complaint, like most companies do.  They form

7   good-faith beliefs and non-infringement defenses early on

8   in the case.

9        We started working with an expert early on in the

10  case.  The good-faith belief was from the moment or shortly

11  after they got notice of the patent.  And there's no

12  evidence of the lack of good-faith belief.  There's no

13  evidence of any intent to induce.

14       Judge, I think I've addressed -- oh, one last

15  point, Judge.  Another one of the new arguments that

16  Plaintiff made, this concept of the devices, some of the

17  watches, the wearables do not have a barometer, which is

18  the exact component that Dr. Easttom identified as

19  performing the incline calculation.  And it's our view, how

20  can those possibly infringe under their view.  And they've

REDACTED BY ORDER OF THE COURT

21  come up with a new argument, ████████████████████████████

22  ████████████████████████████████████████████████████████

23  Whether or not that's true or not, it's nowhere in their

24  infringement contentions.  It's nowhere in their amended

25  infringement contentions.  It's nowhere in Dr. Easttom's

1  report, and nowhere is it in Dr. Easttom's improper

2  affidavit that he submitted about a month ago.

3          So unless Your Honor has any further questions.

4          THE COURT:  No, no.  Thank you.

5          It's a quarter to 12:00, counsel.  We're going to

6  break until 12:15.  I don't know if that's long enough for

7  you all to get lunch or not.  But we're traveling at such a

8  slow pace this morning, we can't afford to take a longer

9  break than that and hope to get done what we need to get

10 done today.  We'll reconvene at 12:15.

11         The Court stands in recess.

12         COURT SECURITY OFFICER:  All rise.

13         (Recess.)

14         COURT SECURITY OFFICER:  All rise.

15         THE COURT:  Be seated, please.

16         Counsel, I'm sorry I took longer than I told you,

17 but I spent the time carefully reviewing this motion for

18 summary judgment that you've argued, as well as the

19 supporting briefing over the break.

20         And I'm prepared to give you the Court's ruling on

21 the Defendants' motion for summary judgment.

22         The Court agrees with the Defendants that the

23 accused devices on their own cannot infringe the asserted

24 method claims.  A device sitting by itself does not

25 infringe a method claim.  But a method claim -- there must

1    be performance of each and every step of the method claim.

2          Now, as to Plaintiffs' assertions of direct

3    infringement against Samsung, the Court finds that there is

4    no sufficient summary judgment evidence that Samsung itself

5    performs each and every step of the method claims asserted

6    in this case in the United States.  And I'm going to grant

7    summary judgment for the Defendants on Plaintiffs' direct

8    infringement claims.

9          As to Plaintiffs' indirect infringement claims

10   asserting that third parties perform each and every step of

11   the asserted method claims within the United States, the

12   Court finds that is a disputed issue with supportive

13   summary judgment evidence on the side of Plaintiffs to put

14   this issue squarely before a factfinder in the context of a

15   jury trial.  Therefore, I'm going to deny the Defendants'

16   motion for summary judgment with regard to Plaintiffs'

17   assertions of indirect infringement.

18         Now, having granted the motion for summary

19   judgment in part, as I've described to you, particularly

20   with regard to the Plaintiffs' direct infringement claims

21   against the Defendants, the Court is aware that the

22   Plaintiffs' damages expert makes no distinction between the

23   direct infringement claims and the indirect infringement

24   claims.

25         The Court's also aware that indirect infringement

1   claims cannot precede the filing of the case.  That

2   consequently disposes of the marking issue in the Court's

3   view.  But it requires the Court to afford some reasonable

4   opportunity for Plaintiffs to amend their damages report in

5   light of the Court's ruling on summary judgment motion.

6          Now, there's not an excessive amount of time

7   between now and the trial date to do that, but the Court is

8   persuaded there is an adequate amount of time for that to

9   occur.  Consequently, I'm going to order that Plaintiffs

10  amend their damages report in the following fashion:

11         Plaintiffs' amended damages report will be

12  produced and served by March the 8th, 2019.

13         Defendants' damages expert will produce and serve

14  a rebuttal to that amended damages report by March the

15  11th.

16         Depositions of the -- depositions by the Defendant

17  of the Plaintiffs' amended damages report deposing the

18  Plaintiffs' damages expert on his amended report and

19  Plaintiffs' deposition of the Defendants' damages expert on

20  his rebuttal report responding to the amended report will

21  take place on March the 14th.

22         Subsequent to those depositions, Daubert motions,

23  if any, as to the amended report from Defendants and as to

24  the rebuttal report from Plaintiffs will be due by

25  March the 18th.  Responses to such Daubert motions in both

 1   directions will be due by March the 21st.

 2          And the Court will consider and rule on those

 3   matters at the second pre-trial on March the 26th.

 4          Now, having said what I've said, I'm going to give

 5   both sides a brief break of approximately 15 minutes to

 6   absorb what I have said, meet and confer with each other,

 7   discuss the same with their corporate representatives, to

 8   the extent they're available, and then in 15 minutes,

 9   I want to see counsel in chambers so that we can discuss

10   the most profitable use of the remainder of our time today

11   in light of the ruling that I've just given you.

12          With that, the Court stands in recess.

13          COURT SECURITY OFFICER:  All rise.

14          (Recess.)

15          COURT SECURITY OFFICER:  All rise.

16          THE COURT:  Be seated.

17          All right.  Counsel, let's go forward with the

18   Daubert motion on Mr. Easttom urged by Defendant, Samsung.

19   Let me hear Samsung's argument from the podium.

20          MR. EDLIN:  Thank you, Your Honor.  Richard Edlin

21   of Greenberg Traurig for Samsung.

22          Your Honor, much of your decision today disposed

23   of much of the argument that we were going to make on -- on

24   Dr. Easttom.  But let me just draw your attention to two

25   paragraphs from his report, and the issue that I want to

1  talk about is whether or not Dr. Easttom could testify that

2  the accused devices actually infringe on the patent.

3          Now, as we all know, under 702, in order for an

4  expert to properly give his opinion to the jury, it has to

5  be based on sufficient facts and data, reliable principles,

6  and then a reliable application of those principles.

7          Let's take a look at -- at the paragraph that my

8  partner, Mr. Kassenoff, put up this morning, and that's

9  Paragraph 110.  And that's in front of Your Honor on the

10  screen.

11          Now, all that happens in Paragraph 110 is he

12  identifies a function, and then he said this demonstrates,

13  and then he puts into -- into quotes the language from the

14  claim.

15          And if Your Honor will just take a look at the

16  first part of Paragraph 110, I think you will take my point

17  on that.  There has been no analysis.  There has been no

18  methodology.  There has been no description of what

19  Dr. Easttom did to come to this conclusion.

20          He says:  Let me identify the

REDACTED BY ORDER OF THE COURT

21  ██████████████████████████████  And then he simply says that

22  demonstrates, and he quotes the language from the patent.

23          Now, that can't possibly serve to qualify as

24  expert testimony.

25          And I'll let Your Honor take a moment and just

1   take a look at that.

2          THE COURT:  I've seen it.

3          MR. EDLIN:  Similarly, let's look above at

4   Paragraph 109, and he outlines another function.  And

REDACTED BY ORDER OF THE COURT

5   simply looking at a diagram, he says:

6

7   All you have to do is look at the diagram in order to do

8   that.  It says:

9

10         How?  How does it do that?  There is no

11  demonstration of anything in that report that would let

12  anybody know how that happened.  It is at most a mere

13  conclusion.

14         Let's take a look at the next sentence.  Then

15  other functions related to a single step are called.  Well,

16  which other functions relating to the single step?  How are

17  they called?  How do they interact?

18         There is just nothing in the short analysis of

19  this code, Your Honor, that in any way would allow anybody

20  to see the methodology between how a vertical step up and a

21  vertical step down and the measurement between those two

22  are correlated.

23         So I think, Your Honor, in the absence of any

24  analysis, and we could go through the rest of these pages,

25  but the problem is endemic to the entire analysis.  All of

1  these paragraphs -- we picked these two.  You could pick

2  any one you wanted, and there would be nothing that would

3  describe how that was done.

4          Now, when we come to Mr. -- Dr. Medvidovic's

5  report, Mr. Kassenoff will walk you through in great

6  specificity Dr. Medvidovic's explanations.  He does apply

7  scientific method.  He does analyze facts.  He does

8  establish how things work together.  It's just simply

9  absent from Dr. Easttom's report.

10          For that reason, Your Honor, and because I think

11  that's the only thing left that Dr. Easttom really could

12  testify to, we believe that his entire report at this point

13  should be stricken, and he not allowed -- not be allowed to

14  testify.

15          THE COURT:  Let me hear Plaintiffs' response,

16  please.

17          Whenever you're ready, Mr. Tollefson.

18          MR. TOLLEFSON:  Thank you, Your Honor.

19          I didn't take their Daubert motion of Dr. Easttom

20  to be a request to strike the entire report based on

21  Paragraphs 109, 110, and 111.  I -- I'm actually a little

22  surprised here.

23          Dr. Easttom, in his report, walks -- walks through

24  and discusses at great length both the code and his traces

25  of the code, which are evidence.

1           So he ran the code through some highly technical

2   equipment that's used by the FBI and -- and other

3   organizations for forensic computer analyses.  And he

4   determined that everything is triggered on this program

5   called detect step.  And there's a number of drawings.  He

6   -- he showed one drawing -- he showed one drawing on Page

7   45 where you have REDACTED BY ORDER OF THE COURT ███████████

8           So we discussed earlier today about step pattern

9   which Dr. Easttom analyzed from Samsung documents and from

10  Dr. Shin's testimony.  And what Dr. Easttom does is provide

11  further additional evidence that Dr. Medvidovic never

12  addresses.

13          So, for example, at Paragraph 118, Dr. Easttom

14  shows ████████████████████████████████████████████████

15  ██████████████████████████  And then he discusses at

16  length what happens.

17          And so these computer traces are important.

18  I don't know how Samsung can take the position that

19  computer traces and forensic -- the application of forensic

20  technology -- I mean, Dr. Easttom is a computer specialist

21  with a forensic background.  He teaches classes -- he

22  teaches classes -- classes, excuse me, in forensic computer

23  investigation.  This is what he does.

24          So in addition to looking at the code, he did

25  stuff that Dr. Medvidovic didn't do.  And so these traces

1   are evidence, and this is precisely the kind of evidence

2   that a jury should be able to hear.

3          Now, Dr. Easttom also performed experiments, and

4   he used the phone in the normal fashion.  As he states in

5   Paragraphs 168, 185, 186, he looked at the code review and

6   analysis, he looked at Dr. Shin and Ms. Park's testimony.

7          And if we look at Paragraphs 87 through a hundred

8   or so, he walks through the information regarding the

9   accelerometer coming in.  And he explains, like, for

10  example, in Paragraph 88, precisely how the motion is

11  detected and a step pattern is created where the pedometer

12  is walking through and looking at the -- it's actually the

13  change in acceleration, walking through the acceleration

14  pattern and determining when a step is taken.  And that

15  shows you the vertical up and the vertical down, and it

16  shows you precisely when REDACTED BY ORDER OF THE COURT

17  

18

19  

20                                                        So

21  this is all evidence that should come in before the jury,

22  and it's scientific evidence.

23          THE COURT:  Let me do this.  Let me see if I can

24  restore a little structure to our argument here.

25          The motion, as presented by Defendants, calls out

1  several discrete issues that I think we would be well

2  served by referring to.

3         The first one, as I read the motion and the

4  related briefing, is whether Dr. Easttom failed to apply

5  the correct legal standard or identify a direct infringer.

6         That probably is rendered moot by the Court's

7  ruling on partial summary judgment.  He's not going to be

8  testifying about direct infringement or the proper legal

9  standard or identifying a direct infringer, at least as to

10  any theory of direct infringement asserted against Samsung,

11  because I granted summary judgment on that.

12         Now, the second issue called out in the motion is

13  whether his opinions regarding induced infringement are

14  reliable, conclusory.  That's certainly something to be

15  argued about now.

16         The third issue called out in the motion is

17  whether the report is based on a material incorrect factual

18  assumption.  And this relates, I think, to the accused

19  products.  This may be getting back to the same issue I

20  heard about earlier today.

21         MR. TOLLEFSON:  That issue has to relate to

22  whether the products are different as between the products.

23         THE COURT:  Right.  And then the fourth issue

24  deals with his Doctrine of Equivalents analysis.

25         And the fifth issue in the motion deals with his

1  anticipation and obviousness standards, whether they should

2  be stricken.

3          And then, lastly, there's a section of his report

4  challenged as relates to his enablement opinions.

5          That's what the motion calls for.  So I'm happy to

6  hear argument on the remaining and live portions of those

7  six issues as called out in the motion.  Looks to me like

8  Issue 1 may have been effectively disposed of by the

9  Court's earlier ruling, but I'm not sure whether the others

10  are.

11          So perhaps we would be better served by focusing

12  on those Issues 2 through 6 in the briefing, rather than

13  trying to do some high level in light of this -- this is

14  in, in light of this, this is out kind of analysis here.

15  So --

16          MR. TOLLEFSON:  Your Honor, I was just trying to

17  address Mr. Edlin's argument --

18          THE COURT:  I'm -- I'm speaking to both sides.

19  Because, in effect, what the Plaintiffs -- excuse me, what

20  the Defendants just got up there and said is the entire

21  report should be stricken, which that's not the motion.

22          Part of -- part of the challenge the Court's had

23  with the hearing today is the argument seems to be

24  untethered to the briefing in large part, and both sides

25  seem to be wandering in and out of various issues that

1   might be issued -- might be mentioned in the briefing.  But

2   to the extent both sides can bring a little more focus to

3   bear, I think the Court would be better -- better served.

4           So -- and I certainly want to afford the

5   Plaintiffs a full opportunity to respond to Defendants'

6   argument, but maybe we need to reset the process, and let

7   me hear argument about these discrete issues that are

8   called out in the briefing.

9           I'm satisfied that Issue 1 is effectively disposed

10  of by my prior ruling.  But I'd like to hear about the

11  argument on whether Dr. Easttom's opinions regarding

12  induced infringement are conclusory and unreliable.  That's

13  perhaps one of the more important parts of Defendants'

14  motion, in light of what's left in the case.

15          Why don't you tell me -- Mr. Tollefson, why don't

16  you tell me why they are reliable, why they're not

17  conclusory, why they shouldn't fall in a Daubert analysis,

18  focusing on his opinions regarding induced infringement?

19          MR. TOLLEFSON:  Okay, Your Honor.

20          So Dr. -- Dr. Easttom's a computer forensic

21  specialist.  He's an expert -- a computer expert, not a law

22  expert.  And Dr. Easttom has analyzed the code and analyzed

23  the testimony and analyzed the documents, and he's

24  concluded through his analysis that -- that the products

25  themselves, that any user of the products would infringe.

1          So in Paragraph 80 -- 187, after going through

2    dozens of pages of analysis, he concludes that any user of

3    the accused Samsung products infringes.

4          So with respect to a claim for inducement, Samsung

5    is fully aware of the patent and the allegations of

6    infringement against it, at least since the date of the

7    complaint.  Then there must be a proof of direct

8    infringement which we believe we'll be able to prove at

9    trial.

10         And then with respect to Dr. Easttom, his

11   testimony is going to be that any user will infringe the

12   claim.  So induced infringement is that Samsung

13   encourages -- encourages its customers, which they

14   certainly did encourage their customers, to use its

15   products.  They sell them, hoping that their customers use

16   the products.  And they provide documentation that

17   encourages their customers to use the products.

18         And since Dr. Easttom's testimony is directly to

19   the point that the customers -- any use of the customers of

20   Samsung's devices infringes the products, then, therefore,

21   the testimony should come in on inducement.

22         THE COURT:  All right.  Anything else on that

23   point you want to argue to me?

24         MR. TOLLEFSON:  No, Your Honor.

25         THE COURT:  Does the Defendant want to join issue

1  on that particular point?

2       MR. EDLIN:  Yes, Your Honor.

3       THE COURT:  Then let me hear some targeted

4  argument on that point.

5       MR. EDLIN:  May I do it from here, Your Honor?

6       THE COURT:  No, you need to go to the podium.

7       MR. EDLIN:  Thank you, Your Honor.

8       Your Honor, with respect to the induced

9  infringement, let me just respond first to the issue about

10  customers.  There's nothing in Dr. Easttom's report about

11  customers.  He couldn't testify to the manuals or training

12  or anything of that sort.  Nothing is there.  So there's

13  nothing for him to say about that.

14       He doesn't discuss two of the most important

15  elements of induced infringement, one, that Samsung was

16  aware of the '556 patent or that it had any intent that its

17  users in any way violate a patent that it knew that its

18  users did infringe.

19       Samsung has a very good-faith belief that it's

20  acting appropriately.  But with respect to the specifics,

21  Your Honor, I believe those three points -- one that was

22  directed at customers that were just -- as I just said, are

23  not in the report, and two of the important elements are

24  not even considered or analyzed by Dr. Easttom, I think,

25  Your Honor, renders his inducement testimony merely

1   conclusory.

2          THE COURT:  All right.

3          MR. EDLIN:  Thank you, Your Honor.

4          THE COURT:  Plaintiff want to respond to that any

5   further?

6          MR. TOLLEFSON:  No, Your Honor.

7          THE COURT:  Then let's move on to the next issue,

8   whether Dr. Easttom's infringement report is based on

9   materially incorrect factual assumptions.

10         I'll hear from Defendant first.

11         MR. EDLIN:  Your Honor, most importantly on this,

12  there are 43 accused products.  For 42 of those products,

13  he does absolutely no analysis as to whether or not, for

14  example, they contain a barometer.

15         Now, Dr. Easttom says that the barometer is the

16  infringing component of the Sam -- of the accused devices,

17  and he does absolutely no analysis of that.  And, in fact,

18  in his deposition, when it was pointed out to him that some

19  of the other products do use a barometer -- do not use a

20  barometer, his response was:  Well, if that's what you're

21  saying, then maybe I need to amend my report.

22         So with respect to those facts, Your Honor, he

23  just has not done a proper analysis.  And, in fact, his

24  assumptions are incorrect.  We think that's the gist.

25         Thank you, Your Honor.

1          THE COURT:  What's Plaintiffs' rebuttal?

2          MR. TOLLEFSON:  Your Honor, in Dr. Easttom's

3   report, he explains that ███████████████████████████

REDACTED BY ORDER OF THE COURT

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████

6        ████████████████████████████████████████████████████

7   ██████████████████████████████████████████████

8   ████████████████████████████████████████████████████████

9   ████████████████████

10         Now, Samsung's 30(b)(6) witnesses have also

11  confirmed that ████████████████████████████████████████

12  ████████████████████████████████████████████

13         Dr. Easttom reviewed the testimony of that, and

14  based on his review of the code and the review of the

15  testimony, he █████████████████████████████████████████

16  █████████████████████████████████████████        That's in

17  Paragraphs 44 and 45 of the Easttom report.

18         So his expert report is reliable on that issue...

19         THE COURT:  All right.  Anything else?

20         MR. TOLLEFSON:  No, Your Honor.

21         THE COURT:  Now, the next issue, as I read it in

22  the motion, is related to whether Dr. Easttom's DOE

23  analysis should be stricken.  And let me hear from the

24  Defendant on this.  I know we have a separate motion

25  regarding DOE, but let me hear about this portion of the

1    Daubert motion.

2        MR. EDLIN:  Yes, Your Honor.  I won't repeat what

3    probably will be the balance of the DOE, but with respect

4    to this, the disclosure dedication rule is violated here by

5    Dr. Easttom.

6        Now, the Court in its Markman order noted that

7    although the patent disclosed but did not claim multiple

8    steps, the fact of the matter is that Claim 17 is a single

9    step.  And so there is an obvious difference between those

10   two which Dr. Easttom gets wrong when he says that there is

11   an insubstantial difference between those two.

12       So to say that another way, the Court's Markman

13   order requires a single step.  That means that multiple

14   steps, two steps, three steps, six steps, by definition,

15   would be materially different.  Otherwise, the Court would

16   have issued a different Markman order.

17       And when Dr. Easttom says that those two things

18   are insubstantially different, that's where that analysis

19   falls apart, Your Honor.

20       So in that regard, with respect to his report,

21   Your Honor, I think that -- that he can't go forward in

22   calling those two things insubstantially different.  It

23   would in -- in effect, it's violative of the Court's

24   analysis under the Markman.

25       THE COURT:  So you're disagreeing with his

```
 1   analysis as to what's insubstantial, but you're not telling
 2   me there's -- the door has been opened or there's some
 3   late-breaking need for additional claim construction, I
 4   gather?
 5           MR. EDLIN:  That's correct, Your Honor -- a
 6   hundred percent correct.
 7           I just think that when you apply the Court's claim
 8   construction of requiring a single step, when Dr. Easttom
 9   says that, well, even if we take multiple steps, it's an
10   insubstantial difference, that that can't be correct.
11           THE COURT:  All right.
12           MR. EDLIN:  Thank you, Your Honor.
13           THE COURT:  Let me hear from Plaintiff.
14           MR. TOLLEFSON:  Can we do the podium, please?
15           Your Honor, earlier I showed you sort of the
16   timeline.  And Samsung's taken the position that the
17   step --        REDACTED BY ORDER OF THE COURT
18
19           And if we -- if we look at that in the context of
20   Dr. Easttom's report where everything starts with
21
22
23           Okay.  And so to the extent that there is some
24   sort of timing issue that is raised, Dr. Easttom has
25   provided a reliable opinion as to the Doctrine of
```

 1   Equivalents, and that's here on Paragraph 118.

 2          You can say that his analysis is that there is ███

REDACTED BY ORDER OF THE COURT

 3   ████████████████████████████████████████████████████

 4   ███████████████   █████████████████████████████████

 5   ██████████████████████████████████████████████████████

 6         ███████████████████████████████████████████

 7   ██████████████████████████████████████████████████████

 8   ████████████████████████████████████████

 9   ███████████████████████████████████

10   ████████████████████████████████████

11         ██████████████████████████████████████████

12   ███████████████   ██████████████████   █████████

13   ███████████████████████████████████████████

14   ██████████████████████████████████████████████████████

15   ████████████████████████████████████████████████

16   ███████████████████████   And so that analysis is

17   reliable.

18          THE COURT:  All right.

19          MR. EDLIN:  Your Honor, may I be heard very

20   briefly on that?

21          THE COURT:  Very briefly.

22          MR. EDLIN:  Your Honor, ██████████████████████

23   ████████████████████████████████████████████████

24   ████   ███████████████████████████████████████

25   ██████████████████████████████████████

1          There is no question that we use an accelerometer.

2   We just don't use it to calculate the incline.  This is not

3   a patent about accelerometers.  It's not a patent about

4   step counters.  It's not a patent about pedometers.  It is

5   only a patent about calculating an incline.

6          Now, the patent teaches one step and one step only

7   is used to calculate the incline.

8          The Samsung products do that differently, as Your

REDACTED BY ORDER OF THE COURT

9   Honor knows, I believe, ████████████████████████████████

10  ████████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ██████████████████████████████████████████████████████

13  ████████████████████████████████████████

14         Now, that has nothing to do, I believe, with what

15  counsel was saying.

16         What Dr. Easttom testifies to is that there's no

17  difference effectively between the one step method that is

18  used by the patent ████████████████████████████████████

19  ████████████████████████████████████████████████████

20         And the fact of the matter is, is that that can't

21  possibly be an insubstantial difference as a matter of

22  logic, but as a matter of the Court's order applying Your

23  Honor's claim construction that what the patent covers at

24  one step, what we do has to be substantially different

25  because otherwise the Court's claim construction wouldn't

1    have needed to construe that term and require one step

2    only.

REDACTED BY ORDER OF THE COURT

3    ████████████████████████████████████████████████████

4    ████████████████████████████         -- he should not be allowed to

5    testify that those are insubstantial differences because

6    that's not accurate that they're insubstantial differences.

7         THE COURT:  Why -- why, counsel, if what the

8    claims require and what the accused products do is so night

9    and day different, why is that something that can't fairly

10   and reasonably be dealt with through cross-examination

11   rather than striking that portion of the report?

12        MR. EDLIN:  Well, Your Honor, I thought you might

13   ask that because I know very well that often vigorous

14   cross-examination is the right way to deal with these types

15   of things in reports.

16        But there's a special problem, I believe, having

17   done this for -- for some time, with very technical issues,

18   and you have juries trying to sort their way through that.

19        So all of this runs the risk of being very

20   complicated and confusing to a jury.  But I think we know

21   enough now to know that there is not an insubstantial

22   difference between the manner in which Samsung calculates

23   and the manner that is required by the patent and the

24   Court's claim construction.

25        THE COURT:  Are you telling me that the jury can't

1  understand these differences -- as you present them, would

2  be more than insubstantial?

3          MR. EDLIN:  I would never say that a jury can't do

4  it.  But I think that there is a risk of confusion there.

5  And I think that we know that those differences are not

6  insubstantial.

7          So the point, I think, is there is always a line

8  there somewhere where you have to fall out on, you know,

9  this is really not appropriate to even put in favor of the

10  jury.

11          And, Your Honor, as has just been pointed out to

12  me, it's not in the infringement contentions.  So I think,

13  Your Honor, we know enough now to know that this is not

14  something that deserves to go to the jury.  The jury will

15  be figuring out plenty in this case.  Much of it will be

16  left to vigorous cross-examination, but, Your Honor,

17  I think this should not be left to that.

18          THE COURT:  All right.  I understand your

19  argument.  Thank you.

20          Let's talk then about the remaining issues called

21  out in the Defendants' motion, and that's whether this

22  expert's standards and opinions relating to anticipation,

23  obviousness, and enablement should survive or should be

24  stricken.

25          MR. EDLIN:  Your Honor, we would be content on

1  both of those to rely on the briefs, if that's acceptable

2  to Your Honor.

3          THE COURT:  That's fine with me.

4          Does Plaintiff have something they want to

5  particularly point out on those, or is Plaintiff satisfied

6  to rely on the briefing there?

7          MR. TOLLEFSON:  I'm also satisfied.

8          THE COURT:  Okay.  Well, with regard to

9  Dr. Easttom's expert report, and in light of the Court's

10  earlier ruling today, I don't expect to hear any testimony

11  from this expert about direct infringement by Samsung.

12          I expect his testimony to be confined to the

13  indirect infringement theories that go forward.  And

14  without being more precise to that extent, I'll grant the

15  motion.

16          However, with regard to whether his opinions

17  regarding induced infringement are conclusory and

18  unreliable, that appears to me to be an issue that's

19  appropriate for presentation to the jury and subject to

20  vigorous cross-examination.  And I'm not going to strike

21  his opinions in regard to that issue.

22          With regard to his report concerning and based

23  upon materially incorrect factual assumptions, I feel much

24  the same there.  If it's inaccurate, it can certainly be

25  reported and fairly dealt with through cross-examination.

1  And I'll deny that portion of the motion.

2         With regard to his DOE analysis, understanding

3  that this doesn't take the place of or supersede the

4  separate motion regarding DOE but limited to what's been

5  raised in this briefing, I'm going to deny the motion

6  there.

7         And considering anticipation, obviousness, and

8  enablement, I've looked at the briefing.  Both sides have

9  rested on the briefing.  And based on the briefing and my

10  review of it, I don't find that appropriate for being

11  stricken under Daubert, and I'll deny the motion there.

12         So in summary, except as to what will be rendered

13  moot by the Court's partial grant of summary judgment, the

14  remainder of the Daubert motion concerning Dr. Easttom is

15  denied.

16         Okay.  Let's move forward and take up Plaintiffs'

17  motion -- Daubert motion regarding Medvidovic --

18  Medvidovic.  That's Docket -- Docket No. 101.

19         MR. TOLLEFSON:  Thank you, Your Honor.

20         THE COURT:  Let's proceed, and let's try to follow

21  the same identified issues from the briefing if we can.

22         MR. TOLLEFSON:  I think this is going to be very

23  easy and short.

24         THE COURT:  Well, let's -- let's find out.

25         MR. TOLLEFSON:  Dr. Medvidovic fails to apply --

1  to apply this Court's claim construction when analyzing any

2  of the prior art.

3          So the first issue that Plaintiffs have raised is

4  that his entire prior art analysis is based not on claim

5  construction but rather some form of articulated assertion

6  based on a prior version of Plaintiffs' infringement

7  contentions is the best as I can come up with.

8          But there simply is not a stitch of analysis

9  applying what's -- we'll call Step 17(c) of the claim,

10  which is the calculation of incline, showing how the prior

11  art discloses the very specific way that Your Honor has

12  construed Claim 17 of identifying a vertical travel up,

13  identifying a vertical travel down.

14          And when you read Dr. Medvidovic's report, he

15  provides a caveat that prefaces every single analysis, and

16  it doesn't materially change.

17          I've -- I've highlighted the words here in bold

18  and italics.  You can see prior to the bold italics, he

19  remarks how specific this court's construction was but then

20  he doesn't apply the construction in any analysis.  He

21  says:  However, to the extent the Plaintiffs are alleging

22  that this limitation can be met by determination of the

23  users walking uphill or downhill, regardless of how that

24  determination is made, then the reference discloses this

25  limitation.

1          And that's pervasive through the report.  And

2   Dr. Medvidovic attached a number of claim charts to the

3   report.  And this particular -- and this is in the

4   briefing.  This particular caveat is also in all the claim

5   charts.

6          And what you -- what you wind up having in

7   Dr. Medvidovic's report is cut and paste large sections of

8   quotes from the prior art next to the claim element with no

9   analysis whatsoever of how the -- the actual claim element,

10  as construed by this Court, is met.

11         So Plaintiffs assert that his report on invalidity

12  is unreliable because it fails to apply the proper claim

13  construction.

14         And the second issue is simply an issue that was

15  already argued this morning, is that this Court's claim

16  construction is not limited to requiring incline be based

17  on accelerometer and only accelerometer.

18         And at Dr. Medvidovic's deposition, I directly

19  asked him this question.  You know, does the third step

20  calculate incline required, that it be based on

21  accelerometer data and accelerometer data only, and he

22  said, yes.

23         And so to the extent that his non-infringement

24  report relies on that construction, the portions of that

25  infringement report should be stricken as unreliable.

1          THE COURT:  All right.  Thank you.

2          Let me hear a response from Defendants.

3          MR. KASSENOFF:  Good afternoon, Your Honor.  Allan

4    Kassenoff, again, for Samsung.

5          I'd like to start on the second part, the

6    non-infringement position, Your Honor, because --

7          THE COURT:  That's fine.

8          MR. KASSENOFF:  -- that will be much quicker.

9          As I indicated this morning in arguing summary

10   judgment of non-infringement, what Samsung is doing,

11   including Dr. Medvidovic, is applying the language of the

12   claim as construed by you as instructed by the rest of the

13   patent to show that we don't meet that limitation.  The

14   Samsung devices do not calculate the incline as required

15   by -- by Claim 17(e).  It's not a matter of not applying

16   the claim construction of Your Honor.  It's exactly the

17   opposite.  It's applying the claim construction, which must

18   be informed with the rest of the patent.

19         And our submission, respectfully, Judge, is he has

20   applied the claim construction, as we explained this

21   morning.

22         With respect to invalidity, Judge, what

23   Plaintiffs' argument really boils down to -- and I'll read

24   this directly from their brief on Page 1.  This is their

25   moving brief, Docket 101.

 1          THE COURT:  Read it slowly.

 2          MR. KASSENOFF:  You bet.

 3          Dr. Medvidovic improperly relies upon his mistaken

 4   understanding of Uniloc's infringement theories, as opposed

 5   to the Court's claim construction, to support his

 6   invalidity position.

 7          That's not correct, Judge.  What Dr. Medvidovic

 8   did is he applied the Court's claim construction against

 9   the prior art.

10          Now, what he did there is he looked at how the

11   Plaintiff is applying the Court's claim construction in an

12   effort to capture Samsung's devices and said:  If you're

13   applying it as broadly -- the Court's.  Strike this.  Let

14   me rephrase that.

15          If the Plaintiff is going to apply the Court's

16   claim construction so broadly as to capture or try to

17   capture Samsung's devices, then I'm going to apply the

18   claim construction broadly, as well, with respect to the

19   prior art.

20          And, Judge, this was addressed by the Fed Circuit

21   last year in the 01 Communique -- Communique Laboratory

22   case, which we briefed in connection with Plaintiffs'

23   Motion in Limine No. 8 which is directly on this point.

24   And in that case, what the Defendant's expert did -- argued

25   that under the trial court's claim construction, Claims 24

1   and 45 were valid but not infringed.  But that if

2   Communique attempted to expand the scope of its claims to

3   include systems -- and then he gets into the language of

4   the Court -- gets into the language here in the claims --

5   in which a location facility merely directs other

6   components, such as the end point computers to create the

7   communication channels, then the claims would be invalid in

8   light of the prior art.

9           So what the expert did in this Communique case,

10   which is Fed Circuit 2018, is exactly what they're accusing

11   Dr. Medvidovic of doing.  And what did the Fed Circuit say?

12   There was nothing improper about this argument.  We have

13   previously stated that there is no practicing the prior art

14   defense to literal infringement.

15          But they continue:  This does not, however,

16   preclude a litigant from arguing that a claim term must be

17   broadly interpreted to read on an accused device, then this

18   same broad construction will read on the prior art.

19          That's exactly what doctor -- what they're

20   accusing Dr. Medvidovic of doing, which the Fed Circuit

21   said is fine.

22          The two cases that Plaintiff relies upon are

23   Core Wireless and TiVo.  And in TiVo, which was also a

24   Fed Circuit case, substantially before the Communique case

25   that I just mentioned, in TiVo, the Court said we're still

1  going to allow the Plaintiffs -- or the expert that was

2  accused of this action to compare the -- the construed

3  claims to the prior art, which is exactly what

4  Dr. Medvidovic is doing here.

5           And in Core Wireless, again, that's

6  distinguishable because in that case, they compared the

7  prior art to the products.

8           And in our situation, Dr. Medvidovic is comparing

9  the construed claims, as read by Plaintiff, against the

10  prior art.

11           And to the extent counsel indicated that there was

12  no analysis by Dr. Medvidovic -- can I get the ELMO,

13  please?

14           There's multiple pages.  So, for example, here's

15  the analysis with respect to the Ladetto prior art

16  reference on 17(c), which is the incline calculation.  And

17  he spent several pages, which is all the highlighting from

18  Plaintiff -- from their submission, where he goes through

19  step-by-step through Ladetto on multiple pages showing how

20  it does, in fact, perform 17(c) as Plaintiff interprets it.

21           What they're really trying to do, Judge, is

22  they're trying to say, Samsung, you use a barometer, we're

23  going to read the claim limitation as the Judge construed

24  it broad enough to encompass usage of a barometer.

25           So we showed prior art that uses a barometer to

1  calculate an incline.  And they're saying, whoa, that

2  doesn't -- excuse me, that doesn't identify the vertical up

3  and down.  That's a change in elevation.  But that's

4  exactly what we're doing.  So they can't have it both ways.

5        Just like in the Communique case, either their

6  reading of your construction is broad enough in an attempt

7  to cover barometers, in which case that's all in the prior

8  art, which Dr. Medvidovic showed, or it's not broad enough,

9  and there's no infringement.

10        Unless Your Honor has any questions, that's all

11  I have on this.

12        THE COURT:  All right.  Plaintiff have anything

13  else on this?  Just a little bit?

14        MR. TOLLEFSON:  Thank you, Your Honor.

15        It sounded like Mr. Kassenoff just admitted that

16  Dr. Medvidovic -- Medvidovic is applying a broader claim

17  construction.

18        The problem here has nothing to do with a

19  barometer.  The problem is, is that Dr. Medvidovic isn't

20  applying the claim construction for 17(c), which includes

21  identifying the vertical travel up, identifying the

22  vertical travel down, and computing a difference.

23        What Dr. Medvidovic's report does is it prefaces

24  every analysis with "to the extent there is a determination

25  that the user is going up or down, regardless of how that's

1  determined," then -- and really only then -- the reference

2  discloses that step.  And that's the wrong claim

3  construction.

4         And Dr. Medvidovic should be stuck to what's in

5  his report, not be able to freelance based on something

6  asserted by Uniloc.  And if his report is based on the

7  wrong claim construction, then it's unreliable, and that's

8  the problem here.

9         I have nothing further.

10        THE COURT:  All right.  Thank you, counsel.

11        Well, with regard to the Daubert motion concerning

12 Dr. Medvidovic on Issue 1, seeking the striking of his

13 invalidity report for failure to apply the claim

14 construction of the Court, the Court's conclusion is that

15 at the end of the day, there's not anything here to strike.

16        The Court permits Defendants' experts take on

17 alternative theories of invalidity.  However,

18 Dr. Medvidovic is bound by the four corners of his report.

19 And if an element isn't there, it isn't there.  He can't

20 add it or testify about it.

21        With regard to the second issue raised in this

22 motion, that his non-infringement report should be struck

23 for applying what Plaintiff characterizes as an objected

24 claim construction, I think it's appropriate for the jury

25 to decide whether or not that's an un -- that his opinions

1    constitute an unreasonable reading of the claim language.

2    And I think that can fairly be dealt with, just as in the

3    earlier motion, by vigorous and robust cross-examination,

4    or as I heard one lawyer say one time, by submitting it to

5    the crucible of cross-examination.

6            Nonetheless, I don't see anything to deny here on

7    the basis of Daubert, so this motion is effectively denied.

8            Now, I do think it makes sense, while we're here

9    today, to turn to Defendants' motion to strike regarding

10   the Doctrine of Equivalents.  And let's go ahead and take

11   that up.  That's Document 96.  And let me hear from the

12   moving Defendants on that.

13           MR. EDLIN:  Thank you, Your Honor.  Again, Richard

14   Edlin, Greenberg Traurig, for Samsung.

15           Your Honor, on January 19th of 2018, the Plaintiff

16   served infringement contentions.  Those infringement

17   contentions contained only literal infringement

18   contentions, and there was no mention of any kind of -- of

19   anything at all to do with the DOE.

20           Now, on November 12th of 2018, there was an expert

21   report that was filed by Dr. Easttom.  And, notably, in

22   addition to asserting the literal infringement arguments,

23   there is a new DOE argument.

24           Now, Your Honor, that was a mere conclusory

25   sentence consistent with what Your Honor's claim

1   construction had at that point been rendered, and it simply

2   discussed how Samsung's calculations were insubstantially

3   different.  We've covered that before.

4          But, Your Honor, in this context, the law is clear

5   that expert infringement reports cannot introduce theories

6   not previously set forth in infringement contentions.

7   There are many cases, Your Honor -- in particular, the

8   ROY-G-BIV case, 63 F. Supp. 3d 690 at 699, and that's

9   Eastern District of Texas 2014.

10          And boilerplate along the lines that we have

11   previously read, Your Honor, does not provide adequate

12   notice of any kind as to what the actual analysis is.  And,

13   again, many cases, Your Honor, but I'm referring to the

14   Biscotti case, Eastern District, 2017; Eolas Technologies

15   from 2016.  And that case law is collected in our moving

16   brief at Page 8.

17          Now -- so with respect to the expert report, the

18   fact that it contains that DOE analysis that was not

19   contained in the infringement contentions is grounds for

20   that to be struck from the report.

21          THE COURT:  What about the local rules, counsel,

22   that allow a party to amend post-claim construction if they

23   have a good-faith belief that that amendment is necessary

24   and appropriate in response to the Court's claim

25   construction?

 1          MR. EDLIN:  Yes, Your Honor.  So turning to that,

 2    there were amended infringement contentions that were

 3    filed.

 4          Now, we all know what the standard for that is,

 5    and the only grounds that a party has to put in a

 6    supplemental and amended infringement contention is if the

 7    Court's Markman -- Markman order was somehow surprising or

 8    unanticipated.  And, Your Honor, there's absolutely no way

 9    on this record that that could be the case.

10          Your Honor, I'd like to put up on the ELMO, and

11    this is out of our brief.  And, Your Honor, if we take a

12    look at the dots -- and this goes back to arguments that

13    were made during the claim construction analysis --

14    Uniloc's brief indicates that it was well aware of

15    Samsung's positions on Claim 17.

16          And if we take a look at that -- those three --

17    and I'll just -- I'll just note that this is from Page 6 in

18    our briefing -- there's no question that Samsung was taking

19    the position that Claim 17 required a single step.

20          And the fact of the matter, Your Honor, is that is

21    indeed what the Court ruled, that there was a single step

22    that was required by Claim 17.

23          Now, it doesn't make any difference whether the

24    Court quoted what Samsung's proposed claim construction

25    language was.  The point here is that the Court didn't

 1   stray very far from it either.  And not straying very far

 2   is language from the case law in situations in which

 3   amendments have been denied because there was nothing

 4   surprising or unanticipated by the Court's Markman order.

 5          The case law on that, Your Honor, is -- is Legion.

 6   And, Your Honor, with respect to the various factors that

 7   are established by the Fifth Circuit, there is no

 8   explanation that -- that the Plaintiff could offer as to

 9   why it didn't amend earlier.  It was well aware of

10   Samsung's positions.  It was well aware in the summer, in

11   June and July, when it reviewed the source code, when it

12   had Samsung's claim construction.  So the failure to amend

13   weighs heavily in favor of exclusion here.

14          Your Honor, the case I'm referring to in terms of

15   factors is Nike versus Adidas, 479 F. Supp. 664, Eastern

16   District of Texas.

17          Your Honor, the second factor is the relative

18   importance of the DOE argument.

19          Now, there's nothing here that's going to prevent

20   Dr. Easttom from giving the testimony that is in his

21   report, and other than the fact that he is improperly

22   including a DOE argument, it is clearly a fall-back

23   position.  His primary positions here is that there is

24   literal infringement.

25          So the fact that he has improperly included the

1   DOE argument in his report doesn't mean that he won't be

2   able to testify to the balance of the report.  And Your

3   Honor has already permitted that.  So there won't be any

4   prejudice to the Plaintiffs' position in that regard.

5          Samsung, on the other hand, will be prejudiced.

6   Fact discovery has closed.  It has no ability to now go

7   back and -- and supplement that record, no ability to put

8   in responsive reports.

9          And so, Your Honor, the fact of the matter is, is

10  that by holding that report -- in holding the

11  supplementation until after that -- the fact discovery had

12  closed, Samsung really has no ability to go back and help

13  itself here.

14         THE COURT:  Well, correct me if I'm wrong,

15  counsel, your expert, Dr. Medvidovic, addresses Easttom's

16  DOE arguments in his report, does he not?

17         MR. EDLIN:  Your Honor, he -- he addresses it,

18  but, again, Your Honor, the fact is that it puts a party to

19  a -- to what courts have -- have referred to as an

20  impossible position, because, Your Honor, you even -- you

21  know, we even have to respond to it in summary judgment

22  arguments.

23         So if the party chooses not to respond hoping that

24  it's stricken, Your Honor, that's not following the rules,

25  and that's an unfair burden on any litigant, whether they

 1   be a Plaintiff or a Defendant.

 2           The fact of the matter is, the rules are there so

 3   that everybody has a fair playing field.  And by

 4   supplementing when there is absolutely no reason or

 5   justification for doing it, those rules are violated.

 6           There's been no demonstration of any kind as to

 7   why the rules were not followed here.  Simply because a

 8   party wishes to respond to arguments that the other side

 9   raises is not justification to violate the rules.

10           THE COURT:  Is there a reason why Samsung waited a

11   month after it got the expert reports in which this was

12   included to file this motion?

13           MR. EDLIN:  I don't think there is any particular

14   reason, other than reviewing it all in the press of time,

15   Your Honor.  But I think this was all filed in a -- in a

16   timely way, and the issue was put on in a -- in a

17   reasonable fashion by Samsung in terms of contesting what

18   it finds to be a violation of the rules.

19           So if Dr. Easttom's report contains a conclusion

20   that's not in the invalidity contentions, that should be

21   out.  And if there's no justification because the Court's

22   ruling in the Markman was clearly anticipated, there is

23   nothing about Your Honor's claim construction that could in

24   any way be considered a surprise.

25           And the only thing that the invalidity contentions

1   do is say in a very, very, again, cursory way, in a very

2   conclusory way that makes it very clear that these are

3   merely backup positions.

4         I'll show you, Your Honor, if I can, the first

5   one.  And if you look at No. 1, it says:  To the extent

6   accelerometer data indicating a motion of a user in three

7   dimensions is found not to be literally practiced by the

8   accused products, Samsung still infringes because any

9   difference argued by Samsung will be insubstantial --

10  there's a -- obviously, a "sic" in there in the original.

11  Samsung's source code, therefore, receives accelerometer

12  data indicating a motion of a user in three dimensions or

13  its equivalence.

14        It's a clear backup argument, Your Honor.  And

15  because it is and because there's no justification for

16  including it, Your Honor, it should be stricken.

17        THE COURT:  All right.  Anything further?

18        MR. EDLIN:  I'm sorry, Your Honor?

19        THE COURT:  Anything further?

20        MR. EDLIN:  No, Your Honor.

21        THE COURT:  Let me hear from Plaintiff, please.

22        So tell me how the claim construction caught you

23  so off guard that your contention amendment was timely

24  under the local rules.

25        MR. TOLLEFSON:  Your Honor, I think it caught both

1  parties off guard.  I think this is set forth in Uniloc's

2  briefs pretty well, but I'll just summarize.

3         The position that Samsung was taking on claim

4  construction were all co-related, and this particular

5  construction was not a straightforward victory for Samsung

6  in the sense that Uniloc and Samsung were arguing in a

7  vacuum that was one step or no step.

8         There were a number of competing elements that

9  include whether or not there was math, whether or not there

10  was going to be some sort of measurement being done, and

11  whether there was -- the measurement was for each step, and

12  so forth.  And so -- and also, the claim itself says for

13  one or more steps.

14         So when this construction came down, you looked at

15  the totality of the construction, it -- it was

16  unforeseeable -- it was unforeseen, at least.  And if you

17  look at -- if you look at the time table and you look at

18  Samsung's positions, I think they were both -- they were

19  also caught off guard on this construction, as well.

20         Now, as -- as you're likely aware, Samsung didn't

21  answer in this case until very recently.  So Uniloc really

22  had no idea about Samsung's non-infringement positions,

23  except for a few data points.

24         So in Samsung's briefing on its motion for leave

25  to answer, they identified a couple of letters that were

1  sent.  There was a letter sent in March 2018, and they

2  didn't identify that they -- that's how their system worked

3  or anything like that.

4        So it wasn't until September of 2018 during the

5  claim construction briefing that Uniloc's expert even

6  started to review the code.  And at that point in time, you

7  know, these code reviews take a long time.  They have to go

8  visit and look through code on a computer owned by the

9  Defendant.  And then they have to order the code, and the

10  parties debate on that stuff.  So that was actually going

11  on during claim construction.

12        And then we had the Markman hearing, and your

13  order came out on October 25th.  And then that's when

14  Samsung claims they sent the letter, and, indeed, they did

15  send the letter next and the first time they asserted this

16  [REDACTED BY ORDER OF THE COURT] And that

17  wasn't -- that wasn't really articulated in any manner for

18  Uniloc to understand the non-infringement position until

19  November 12th, 2017 [sic].

20        And then at that point in time, we see that

21  Samsung served its interrogatory responses, and they

22  actually cite to the same language we've been talking about

23  today with Dr. Shin, [REDACTED]

24  [REDACTED] And that

25  is -- that's exactly what Dr. Easttom's opinion is directed

1   to.

2        So Uniloc had a good-faith basis for believing

3   that it needed to amend its infringement contentions based

4   on Your Honor's claim construction order.  And it was

5   directed to a new position that Samsung has taken after

6   claim construction.

7        I think both -- both parties were surprised.

8        And then -- so Samsung is talking about some sort

9   of prejudice to it, but it had -- it had a fair opportunity

10   to depose Dr. Easttom on his opinions.  So there really

11   isn't a prejudice there.

12        But it's -- it's Samsung that is moving the ball.

13   It's a moving target.  Samsung changed its position to this

REDACTED BY ORDER OF THE COURT

14   whole            , which we talked about today, and

15   that's -- that first showed up in a court filing with its

16   motion for summary judgment, and it first showed up -- it

17   was first noticed to Uniloc in December, after

18   Dr. Easttom's report, when it showed up for the first time

19   in Dr. Medvidovic's non-infringement report.  And then, of

20   course, it was later that the testimony changed to match

21   that.

22        So in summary, Uniloc didn't violate the rules

23   because they were permitted to amend based on the claim

24   construction.  They had a good-faith basis for believing

25   that they needed to amend, and there is no prejudice to

1   Samsung.

2        MR. EDLIN:  Your Honor, may I briefly?

3        THE COURT:  I'll give you a brief rebuttal.

4        MR. EDLIN:  Your Honor, again, if it's all right,

5   I'd just like to put up what comes direct -- directly out

6   of -- directly out of the Sam -- the Uniloc briefing prior

7   to the Markman.

8        And what -- if you just take a look at No. 2, it

9   says:  Samsung -- this is Uniloc referring to Samsung's

10  arguments but prior to the Markman.  Samsung argues that

11  computing a difference requires measuring the vertical

12  travel up and down and then performing direct subtraction

13  for each single step.  This is before the Markman.  This is

14  Uniloc's briefing -- clearly understands what Samsung's

15  position is that it's a single step.

16       This is the third bullet point:  Samsung

17  impermissibly reads into its constructions, as explained

18  above, that computing a difference requires specific

19  measurements and subtraction to be carried on a

20  step-by-step basis, and identification requires measuring

21  the vertical up and down on each step.

22       Now, Your Honor's claim construction substantially

23  agreed with that.  They were arguing for plain meaning.  We

24  were arguing for a single step.  The fact that they

25  disagreed with Your Honor's claim construction or the fact

1  that they didn't propose the claim doesn't mean that it

2  could have been surprising, because by and large, Your

3  Honor, you adopted one way or the another the parties'

4  claim constructions.

5       And there can be no one who could reasonably argue

6  that having identified Samsung's positions here prior to

7  the Markman as requiring step-by-step and Your Honor's

8  claim construction requiring it to be step-by-step could in

9  any way be surprising or unanticipated as the law requires.

10      Your Honor, I'd also finally point out -- just as

11  my note on the side there says -- with respect to deposing

12  Dr. Easttom, there's only one of his -- he only has one DOE

13  argument.  The supplemental -- the amended contentions have

14  three.  So there would have been no opportunity to depose

15  him on -- on the two that were not in his -- in his report.

16      But, again, Your Honor, it just -- it just can't

17  possibly be said that when you read what we just looked at

18  where we were asking for step-by-step, that when Your Honor

19  essentially gave that claim construction, that it was

20  unanticipated.

21      THE COURT:  But you're not saying that though the

22  amended contentions may have included three points and the

23  experts have subsequently opined on one point, you're not

24  saying that there's a risk that you're going to be

25  challenged on those other points that weren't addressed in

1  the expert's reports at trial, are you?

2         MR. EDLIN:  No, I'm trusting, Your Honor, that

3  that will not be the case.  But the point is that the

4  entirety of the -- of the amended contentions should be

5  stricken, because there is no way that they can possibly

6  argue based on what we have just seen that it was

7  unanticipated.

8         Your Honor essentially granted what we were asking

9  for on that claim construction.

10        With respect to the -- the DOE analysis that is in

11 Dr. Easttom's report, it is not in the original

12 contentions, and it cannot, therefore, as a matter of law,

13 as we discussed a moment ago, be introduced for the first

14 time in an expert's report.  And it should actually be

15 stricken for that reason.

16        This is, I believe, a wholesale violation of the

17 rules on both of those points, and that is essentially,

18 Your Honor, why we believe it's appropriate for the amended

19 contentions to be stricken.

20        Thank you.

21        THE COURT:  All right.  Thank you, counsel.

22        Well, it's clear to the Court that there's a

23 certain amount of sloppiness here, and the Court's

24 inclination in this kind of environment is always to try to

25 cut through that and look at what effectively the posture

1    and positions of the parties is, what the parties have

2    known, when they knew it, and did they have a fair

3    opportunity to prepare or respond.

4            In this case, it's significant in the Court's view

5    that this amendment was disclosed on November the 12th, and

6    it wasn't until December the 13th that Defendants

7    challenged it formally.

8            And it -- more importantly, it's clear to the

9    Court that Samsung has really not been prejudiced here.

10   They had time to respond to this issue.  In fact, their

11   expert, Dr. Medvidovic, submitted his report on

12   December the 3rd, three weeks after they became aware of

13   the DOE arguments from Plaintiff and 10 days before they

14   filed this motion to strike.

15           This is not a situation where Samsung is going to

16   be ambushed or prejudiced.  And to the extent that the

17   amendments to the contentions may be broader than the

18   experts' opinions, the Court is certainly not going to

19   allow the competing experts to broaden or expand their

20   opinions outside the four corners of their reports.

21           Effectively, to some extent, this is almost akin,

22   in the Court's view, to parties who have tried an issue by

23   consent, and then later say, wait a minute, you didn't get

24   permission.

25           I'm going to deny the motion.  I don't see that

1   there's any real prejudice to Samsung here.  I can assure

2   Samsung, I'm not going to allow Dr. Easttom to expound

3   beyond his report, which has been responded to and drawn

4   issue on by Dr. Medvidovic.

5          So for all intents and purposes, given that, yes,

6   there's been some sloppiness in how the case has been

7   prepared and would it have been better to have raised the

8   issue earlier?  Yes.  But if I throw out everything that

9   could have been done better by the time we get to

10  pre-trial, we'll never have anything left to try.

11         Ultimately, this is a determination that comes

12  down to a matter of prejudice.  In the Court's view,

13  Defendant has not been prejudiced here.  So I'm going to

14  deny the motion.

15         All right.  Counsel, let me recap with you where

16  we are, at least in the Court's view, with regard to the

17  pre-trial matters set for today.

18         I've just ruled on the motion to strike regarding

19  the Doctrine of Equivalents.

20         I've taken up and ruled on the Daubert motion

21  directed toward Dr. Easttom.

22         I've ruled on the Daubert motion directed to

23  Dr. Medvidovic -- Medvidovic.

24         I've taken up and heard and ruled on Defendants'

25  motion for summary judgment of non-infringement, partially

1    granting that motion and partially denying it.  That

2    partial grant by the Court effectively renders the

3    Defendants' motion on no pre-suit damages as moot.  And

4    I'll find that Document 100 is moot in light of the Court's

5    ruling on the summary judgment motion.

6            As far as dispositive issues before the Court,

7    that leaves us with the Rosenthal Daubert motion, which

8    I intend to take up after the Rosenthal report has been

9    amended, as the Court granted leave for earlier today.  And

10   I'll take that up on March the 26th.

11           That also leaves us the motions in limine, which

12   I think everyone agrees -- you indicated so in chambers --

13   that they can be substantially streamlined in light of the

14   guidance received today.  And I'll expect those to be

15   updated and resubmitted to the Court in advance of the 26th

16   in that streamlined form so that I can easily deal with

17   those.

18           And that leaves us the issue of disputed exhibits

19   to be pre-admitted.  And I'm hopeful, and I think

20   reasonably so, that with the guidance you've received

21   today, that process can be substantially streamlined, if

22   not completely dealt with by agreement.

23           So that's where we are.  The Court intends to

24   recess the pre-trial hearing at this point, and I'll

25   reconvene it on the 26th of March at 9:00 A.M. in hopes

1   that you can work through the remaining issues here in

2   short order.

3            Are there questions from either Plaintiff or

4   Defendant at this junction?

5            MR. TOLLEFSON:  No, Your Honor.

6            THE COURT:  Anything from Defendants?

7            MS. SMITH:  No, Your Honor.

8            THE COURT:  All right.  Thank you for your

9   presence and your argument, counsel.  We stand in recess.

10            COURT SECURITY OFFICER:  All rise.

11            (Hearing concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          <u>CERTIFICATION</u>

2

3          I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9    /S/ Shelly Holmes _____              3/6/19_____
     SHELLY HOLMES, CSR, TCRR                Date
10   OFFICIAL REPORTER
     State of Texas No.: 7804
11   Expiration Date: 12/31/20

12

13

14

15

16

17

18

19

20

21

22

23

24

25